786 P.2d 948

**STATE of Arizona, Appellee,**

v.

**Ronnie Lloyd CONNER, Appellant.**

**Nos. CR–84–0264–AP/PC and CR–85–0347–AP.**

Supreme Court of Arizona, En Banc.

Jan. 9, 1990.

Kenneth D. Everett, Mohave County Public Defender by Michael J. Burke, Deputy Public Defender, Kingman, for appellant.

## OPINION

MOELLER, Justice.

### JURISDICTION

Defendant Ronnie Lloyd Conner was convicted of first degree murder and armed burglary. At his first sentencing, he was sentenced to death for the murder and to ten and one-half years for the burglary. After further proceedings in the trial court, including a plea agreement involving these and other charges, he was resentenced and received life imprisonment on the murder count. Thereafter the state successfully moved to have the plea agreement and life sentence set aside and defendant was again resentenced, this time receiving the death penalty. He appeals. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

### ISSUES PRESENTED

1. Whether defendant is precluded from asserting ineffective assistance of trial counsel in his second petition for post-conviction relief.

2. Whether the trial court erred by admitting into evidence a letter purportedly written and signed by defendant (Exhibit 28) and a note written by him during the trial (Exhibit 42).

3. Whether the trial court committed fundamental error by failing to instruct the jury, *sua sponte*, concerning its obligations with respect to Exhibits 28 and 42.

4. Whether the defendant, who did not testify, can challenge the trial court's ruling that his statements could be used for impeachment if he had testified.

5. Whether the trial court erred by setting aside the plea agreement and sentence of life imprisonment and resentencing defendant to death because of in-custody statements made by the defendant to the

Robert K. Corbin, Atty. Gen. by Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

prosecutor during an uncounselled interrogation.

### FACTS

The facts of the crime are depressingly sordid, even by murder case standards. They are, however, essentially immaterial to the issues on appeal, so we refrain from reciting them in detail. An understanding of the procedural background of the case, however, is essential to the disposition of some issues.

Defendant was originally tried, convicted, and sentenced to death for murder and to a term of years for burglary. He appealed. We struck his appointed counsel's opening brief as inadequate and appointed new counsel. New counsel petitioned the trial court for post-conviction relief (PCR) on the basis of ineffective assistance of trial counsel at the sentencing phase. The trial court agreed with defendant's contention, granted his PCR, and ordered resentencing. While awaiting resentencing, defendant escaped from custody on two occasions. Ultimately, he was apprehended in California and returned to Arizona. In the interim, his first appeal was dismissed as moot because his sentencing had been set aside.

Before resentencing, defendant and the state entered into a written plea agreement in which defendant pled guilty to escape and agreed to testify in any prosecution brought against A.F., another alleged participant in the murder. Defendant further agreed to be interviewed by the prosecutor concerning the victim's death and to provide truthful answers to questions in the interviews or in testimony. In exchange, defendant was to receive a two and one-half year sentence on the escape charge, a life sentence on the first degree murder charge, and a ten and one-half year sentence on the burglary charge.

The agreement expressly permitted defendant to proceed with an appeal challenging the validity of his murder and burglary convictions. The agreement also provided

that if defendant failed to comply with it, it would be rendered "null and void" and the state could withdraw from the agreement. On August 24, 1984, defendant was resentenced to life imprisonment pursuant to the plea agreement.

Approximately five months later, on January 15, 1985, the prosecutor, with a deputy sheriff, interviewed defendant in the Mohave County Jail.[1] The prosecutor conducted this interview in the absence of defendant's attorneys and without notice to them. One week after the interview, the prosecutor moved to set aside the plea agreement and the life sentence on the ground that defendant's statements at the interview showed that defendant had breached the plea agreement.

At an evidentiary hearing held on the prosecutor's motion, the trial judge found that defendant's statements at the interview evidenced a breach of the plea agreement. The trial court set aside the plea agreement and the life sentence and resentenced defendant to death. Defendant appeals from this order and resentencing as well as from the original convictions for burglary and murder. We consolidated the appeal with the review of his second PCR.

### DISCUSSION

1. **The Second PCR's Assertion of Ineffective Assistance of Trial Counsel**

■ After this court discharged defendant's first appellate counsel and the trial court appointed new counsel, that new counsel filed a PCR, successfully contending that defendant's original trial counsel had been ineffective at the sentencing stage. Consequently, defendant's original death sentence was vacated and a resentencing was ordered. After defendant's plea agreement was set aside and he was resentenced to death, his counsel filed a second PCR. In this second PCR, one of defendant's contentions, advanced for the first time, was that his former counsel had

1. Defendant was apparently returned to the county jail from the state prison in Florence for

this purpose.

been ineffective at trial.[2] The trial court denied the second PCR and held that defendant was precluded from advancing additional claims of ineffective assistance of the same counsel.

Rule 32.2 of the Arizona Rules of Criminal Procedure and A.R.S. § 13–4232 are substantially identical—both deal with preclusion in post-conviction matters. Rule 32 provides that "[a] petitioner will not be given relief ... based upon any ground ... [k]nowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding." Ariz.R. Crim.P. 32.2(a)(3), 17 A.R.S.; *see also* A.R.S. § 13–4232(A)(3). Rule 32 further provides that "[t]he court may infer from the petitioner's failure ... to raise any ground then available to him in a previous Rule 32 proceeding ... that he knowingly, voluntarily and intentionally relinquished the right to do so." Ariz.R.Crim.P. 32.2(c); *see also* A.R.S. § 13–4232(C).

The trial court correctly ruled that defendant was precluded from urging new claims of alleged ineffective assistance of counsel on his second PCR. *See State v. Carriger*, 143 Ariz. 142, 692 P.2d 991, *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1984). The trial court could very reasonably and properly conclude that counsel's decision to raise ineffectiveness of counsel only at the sentencing stage in the first PCR was made after an analysis of former counsel's representation, and that the omission of any additional claim at that time was intentional. Certainly there was ample opportunity to raise the claim in the first PCR.

2. Admission of the Letter (Exhibit 28) and the Note (Exhibit 42)

██ Defendant contends the trial court erred by receiving two written documents in evidence over his objections. The documents are a letter purportedly in defendant's handwriting and bearing his signature (Exhibit 28) and a note admittedly printed and signed by him during the trial (Exhibit 42). Exhibit 28, the letter, was written to L.A., a witness in the case. If genuine, the letter is extremely damaging to defendant.[3] The prosecution possessed Exhibit 28 prior to trial. Pursuant to Rule 15.2(a)(7) of the Arizona Rules of Criminal Procedure, the state obtained a pretrial order directing defendant to provide a handwriting sample for purposes of comparison with Exhibit 28. However, defendant refused to provide a sample. The trial court found defendant in willful violation of the order and ruled that the state would be permitted to show at trial that defendant refused to submit a handwriting specimen.

At trial, in the jury's presence, the state questioned L.A., the person to whom the letter was addressed. The envelope containing the letter was addressed to her husband. L.A. testified that she received the letter from her mother-in-law. Although the letter was opened before she received it, it did not appear altered. She testified that the letter was sent from Kingman (where the defendant was incarcerated), that defendant was the only person she knew in Kingman, and that she had no reason to doubt that defendant wrote the letter. However, on cross-examination, she testified that she was not sufficiently familiar with defendant's handwriting to judge whether the letter was in fact written by defendant.

During the trial, defendant wrote a printed note to S.N., another witness (Exhibit 42). In the jury's presence, the state laid a foundation showing that the printed note

---

**2.** The second PCR was not limited to the ineffective assistance claim. Among other things, it challenged the propriety of using defendant's statements at the uncounselled interview of January 15, 1985, against him. This contention is discussed *infra*.

**3.** The letter reads in part:
I was thinking that we could beat this case and put it all on Laurie if noone has talked except laurie.

all we have to say is Laurie paid someone to kill the old man and went around bragging about how she had all that money and it didn't cost her to much. remember she talked about that 15 hundred dollar check to go on vacation with well thats what is gonna hang her tell this to Amy in a letter or on phone make ·sure she has exactly as I have writen it. if Amy has given a statement forget it all.

was authored by defendant. The court, during arguments held out of the jury's presence, ruled Exhibits 28 and 42 admissible under Rule 901(b)(3) of the Arizona Rules of Evidence.[4] Defendant challenges that ruling.

Rule 901 of the Arizona Rules of Evidence sets out the requirements for authenticating documentary evidence. Rule 901, Ariz.R.Evid., 17A A.R.S. Subsection (a) of Rule 901 provides that prior to admission, the proponent must put forward "evidence sufficient to support a finding that the matter in question is what its proponent claims." Subsection (b) then sets forth various non-exclusive methods by which documents may be authenticated. Subsection (b)(3) provides that one permissible method of authentication is "comparison by the trier of fact ... with specimens which have been authenticated."

Even if we assume the testimony given by the recipient of Exhibit 28 was insufficient to authenticate it, an issue we need not decide, the state did properly authenticate Exhibit 42, the handwritten note to S.N. Thus, both exhibits were admissible under Rule 901(b)(3) for the purpose of permitting the jury to compare the two to determine the authorship of Exhibit 28, and the trial court committed no error in admitting them for that purpose.

### 3. Lack of a Jury Instruction Concerning Exhibits 28 and 42

■ Defendant contends alternatively that, even if Exhibits 28 and 42 were properly received in evidence, the trial court was required to formulate a jury instruction advising the jury of its role with respect to the exhibits. Defendant acknowledges that he submitted no such proposed instruction to the trial court, nor did he object to the trial court's failure to give one sua sponte. Defendant nonetheless contends that the omission of such an instruction rises to the level of fundamental error, thus excusing both his failure to request

such an instruction and his lack of objection to the trial court's failure to give one.

If requested, the trial court appropriately could have given an instruction to the effect that Exhibit 42 was received for the purpose of comparing it with Exhibit 28 to assist the jury in determining whether defendant was the author of Exhibit 28. Because no such request was made, we must decide whether the trial court's failure to give such an instruction sua sponte rises to the level of fundamental error.

Rule 21.3(c) of the Arizona Rules of Criminal Procedure provides:

> c. **Waiver of Error.** No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof ... unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Concerning failure to object to a given instruction, the United States Supreme Court has stated:

> It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

*Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203, 212 (1977).

Concerning failure to object when an instruction is not given, we have said:

> If a defendant does not object to a trial court's failure to give an instruction then the defendant may not claim error on appeal unless the failure to instruct rises to the level of fundamental error.

*State v. Zaragoza,* 135 Ariz. 63, 66, 659 P.2d 22, 25, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983).

We have defined fundamental error as follows:

> Fundamental error is error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial. It usually, if not always, involves the loss of federal constitutional rights.

---

**4.** Because we uphold admissibility under Rule 901(b)(3), we do not consider other theories of

admissibility argued in the trial court.

A claim of fundamental error is not a springboard to reversal where present counsel is simply second-guessing trial counsel.

*State v. Smith,* 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977).

Citing *Smith* and other authorities, we have more recently stated:

Error is fundamental when it reaches the foundation of the case or takes from the defendant a right essential to his defense, or is an error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.

*State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

Applying these tests for fundamental error, we are satisfied that no such error occurred here. No constitutional principle is implicated. We have already concluded that both Exhibits 28 and 42 were properly received in evidence. The jury knew that Exhibit 42 was a note written by defendant during the trial, that he challenged the authenticity of Exhibit 28, and that he refused to submit a handwriting sample although ordered by the court to do so. If arguable error occurred, it surely was not fundamental and was waived by defendant's failure to bring it to the trial court's attention.

4. Use of Defendant's Statements for Impeachment

■ While defendant was in custody and after he invoked his right to remain silent under *Miranda,* police officers questioned him concerning certain photographs. Defendant gave answers which could be considered incriminating. At a pretrial motion to suppress, the trial court ruled that the state could not use defendant's statements in its case-in-chief because they were obtained in violation of *Miranda.* However, the court also ruled that the state could use the statements for impeachment if defendant testified. *See generally Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (voluntary statements taken in violation of *Miranda* admissible to impeach); *State v. Walker,* 138 Ariz. 491, 495, 675 P.2d 1310, 1314 (1984). Defendant did not testify at trial. On appeal, he argues that the trial court's pretrial ruling inhibited his decision on whether to testify.

In response, the state directs our attention to *State v. Allie,* 147 Ariz. 320, 327, 710 P.2d 430, 437 (1985) (following *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)), which holds that a defendant must testify before challenging an adverse pretrial ruling allowing prior convictions to be admitted for impeachment purposes. The state urges us to apply a similar rule where a defendant moves to exclude extra-judicial statements obtained during a custodial interrogation.

We believe *Luce* and *Allie* are based on sound policy considerations. Without defendant's testimony, a reviewing court cannot properly weigh the probative value of the testimony against the prejudicial impact of the impeachment. *See* Rule 609(a), Ariz.R.Evid., 17A A.R.S. This balancing requires a complete record, including defendant's testimony, the cross-examination and an analysis of the impact of the impeachment evidence on the jury. *Luce,* 469 U.S. at 41–42, 105 S.Ct. at 463, 83 L.Ed.2d at 447–48. Furthermore, without defendant's testimony, the court is left to speculate on review whether the state would have in fact sought to impeach defendant with the prior convictions, and whether the adverse ruling in fact motivated defendant's decision not to testify. *Id.*

The same policy considerations that lead to the result in *Luce* and *Allie* are present here. Although the impeaching questions are permitted under *Harris,* the trial court is still required to balance probative value against prejudice under Rule 403, Ariz.R. Evid., 17A A.R.S.; *see United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.1986), *cert. denied,* 479 U.S. 831, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986) (*Luce* extends to FRE 608(b) cases because of balancing requirements of FRE 403). In addition, requiring defendant to testify prevents defendant from "cynically manufacturing a basis for a possible appeal by falsely alleging that the threat of impeachment alone deterred him from testifying." Westen & Mandell, *To Talk, To Balk, or to Lie: The Emerg-*

*ing Fifth Amendment Doctrine of the "Preferred Response,"* 19 Am.Crim.L.Rev. 521, 552 (1982). Furthermore, this requirement ensures that the reviewing court is presented with an actual, rather than hypothetical, injury. *Id.; see also People v. May,* 43 Cal.3d 436, 233 Cal.Rptr. 344, 729 P.2d 778 (1987) (Lucas, J., dissenting) ("in absence of such a rule a reviewing court would be unable to determine whether the error committed was prejudicial"), *vacated,* 44 Cal.3d 309, 243 Cal.Rptr. 369, 748 P.2d 307 (1988).

Because defendant did not testify, we hold that he may not attack the pretrial ruling conditionally admitting his statements for impeachment in the event he did testify.

5. The Trial Court's Order Setting Aside the Plea Agreement

■ Defendant's final contention is that the order allowing the state to withdraw from the plea agreement is flawed. This order permitted the resentencing from life imprisonment to death. The trial court entered the order because it found that statements defendant made to the prosecutor during a custodial interrogation showed defendant's breach of the plea agreement.

Defendant first argues that his statements at the interrogation cannot be used as a basis to set aside the plea agreement because the interrogation was conducted without the presence of his lawyers, with no notice to them, and with no opportunity for him to arrange for a lawyer. Defendant next argues that the statements cannot be used because the prosecutor concededly did not "Mirandize" him prior to the interrogation. Because we agree with the defendant's first contention, we do not reach his second.

At the interrogation, the prosecutor confronted defendant with statements allegedly contradictory to his earlier statements concerning A.F.'s complicity. The prosecutor's own notes, made immediately after the interview, showed:

Conner was very hesitant and kept asking what effect this was going to have upon his deal and stating that he did not want to go back to death row. I told him my concern at this time was only with the case against Amy and that I needed to know what his testimony would be at her trial if called as a witness. Conner finally admitted that he had made the statements to Hunt and Warren which have been attributed to him.

The prosecutor's notes continue:

Conner's main concern at this point now became what effect this would have upon his plea agreement and whether he'd be returning to death row. He asked me repeatedly what would now happen with his case. I told him I needed to think about the implication of his statements, regarding both his case and Amy's case, that I'd let him know my decision within next week.

Within the week, the prosecutor decided to file a motion to withdraw from the plea agreement.

Defendant testified that at the interrogation he did acknowledge having made some inconsistent statements. He testified he did so because he understood the prosecutor's words and actions as "fishing" for some way out of a weak case against A.F. Defendant stated that he wished to accommodate the prosecutor.

The testimony of the deputy sheriff, who was present at the interrogation at the request of the prosecutor, completely confirms the prosecutor's notes concerning defendant's hesitancy and reluctance at the interrogation and his overriding concern about the effect upon his plea agreement and sentence.

■ The state contends that defendant waived his constitutional rights, including his right to counsel, by signing the plea agreement. The state contends such waiver is implicit in the agreement to be interviewed that is contained in the plea agreement. We believe the state has inverted the concept of waiver of constitutional rights. Defendant need not specifically reserve his rights; instead, he must specifically waive them. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The plea agreement remained exec-

utory on defendant's part and expressly subjected him to the death penalty in the event of a breach. This was exactly defendant's concern during the interrogation, although the prosecutor avoided his questions about the death penalty ramifications.

■ A defendant is entitled to assistance of counsel at every critical stage of criminal proceedings. *E.g., Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *State v. Hartford,* 133 Ariz. 328, 329, 651 P.2d 856, 857 (1982), *cert. denied,* 464 U.S. 842, 104 S.Ct. 141, 78 L.Ed.2d 133 (1983). A critical stage is one where "substantial rights of the accused may be affected." *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336, 340 (1967); *see also Coleman v. Alabama,* 399 U.S. 1, 10, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387, 397 (1970).

■ In this case, the plea agreement provided that if defendant failed to comply with the agreement at any time, the state could withdraw from the agreement and seek the death penalty, even after sentences had been imposed. This is a permissible provision. *See Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); *Adamson v. Superior Ct.,* 125 Ariz. 579, 611 P.2d 932 (1980). A review of the record amply demonstrates that the whole purpose of the interrogation was to confront defendant with his allegedly inconsistent statements. The interrogation led directly to a change in defendant's sentence from life to death. Certainly, a proceeding conducted by the prosecution involving information from which defendant might be, and ultimately is, sentenced to death is a critical stage. *See Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (use of medical testimony based on an examination made at state's request and without notice to defense counsel at a capital sentencing proceeding violated defendant's sixth amendment right).

The state argues that the presence of defense counsel would have made no difference. This is mere speculation that the constitutional error was harmless and that counsel's absence was immaterial. Had one of defendant's attorneys been present at the interview, he would have had the professional obligation to assure that the defendant understood the need to comply with the plea agreement and to give truthful statements. He would have had the opportunity and the responsibility to explain to defendant the potential consequences of a breach of the agreement. The record clearly reflects that defendant repeatedly asked the prosecutor what effect the interview would have on his agreement and sentence. While the prosecutor avoided responding, we have no reason to believe defense counsel would have done so.

The state was improperly permitted to withdraw from the plea agreement based on its interview with the defendant without counsel. The order permitting the withdrawal is set aside. Thus, the plea agreement and sentence that the state and the defendant negotiated are still in full force and effect.

## DISPOSITION

We find no infirmities in defendant's convictions and affirm them. Because the state was improperly permitted to withdraw from its plea agreement, the resultant death sentence must be, and hereby is, vacated. The stipulated sentences agreed to in the plea agreement are reinstated.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.