NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SUN BENEDICT ARELLANO, *Appellant.*

No. 1 CA-CR 18-0327

FILED 4-23-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-118414-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Kerrie M. Droban, Phoenix
*Counsel for Appellant*

Sun Benedict V. Arellano, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James B. Morse Jr. joined.

---

**P E R K I N S**, Judge:

¶1        Sun Benedict Valentino Arellano appeals his convictions and sentences for first degree burglary and aggravated assault. After searching the record, Arellano's defense counsel identified no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error. Arellano has filed a supplemental brief in *propria persona*. After reviewing the entire record, we reject the arguments raised in Arellano's supplemental brief and find no error. We affirm his convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        On April 20, 2017, M.P., a university student, arrived home from class around 8:00 p.m. After entering the home, M.P. noticed an unfamiliar bike on the floor, a backpack that did not belong to her or her roommates, and damage to her kitchen cabinets. A few moments later, a man entered the kitchen with a knife. Terrified, M.P. dropped her phone, keys, and backpack and ran out of the house. She saw her assailant for only a second. M.P. then ran to a parking lot a few blocks away, yelled for help, and another student called 9-1-1 on her behalf. A police officer arrived shortly after. In his report, the officer stated M.P. described her assailant as a black male, 5'8", medium build, and possibly wearing a white shirt. Arellano is not black.

¶3        After the 9-1-1 call, another police officer arrived at the home and found Arellano in the front yard pushing a bicycle. Arellano was also carrying M.P.'s backpack, a six-pack of alcohol from M.P.'s fridge, and the unfamiliar backpack M.P. saw on her kitchen floor, all of which M.P. identified later that evening. The officer asked Arellano to stop, but Arellano responded that the officer could not do anything to him and began to walk away. The officer placed Arellano in handcuffs, and a kitchen knife fell onto the roadway. M.P. later identified the knife as one from her kitchen. The officer asked Arellano to provide identification.    Arellano

answered that he had not had time "to go through her things," but the officer had yet to even mention a victim or the victim's gender. The officer then advised Arellano of his *Miranda* rights, and Arellano consented to questioning. Arellano eventually confessed, telling the officer that he went into the home through a window, ate meatballs left on the stove, and took things from the home (including a knife from the kitchen).

¶4        The State charged Arellano with first-degree burglary, a class two dangerous felony, and aggravated assault, a class three dangerous felony. The trial court ordered an Arizona Rule of Criminal Procedure 11 evaluation due to Arellano's mental health issues. The parties eventually stipulated competency.

¶5        The case proceeded to a jury trial, and M.P. testified about the burglary. She could not remember telling the officers that her assailant was a black male. During the arresting officer's testimony, the State played body cam footage showing Arellano's confession. Arellano asked the court to allow him to play other portions of the footage from his arrest, including footage of Arellano's saying he was insane. The court ruled that those portions of the footage contained self-supporting statements and were inadmissible hearsay.

¶6        Arellano testified at trial. He claimed that, on the night of the burglary, he had been walking by M.P.'s house when Ray Ray, his black "street father[,]" ran out of the house. Arellano testified that Ray Ray put a knife to his chest and threatened to kill him unless he took the fall for the crime. Before Ray Ray left, Arellano claimed that Ray Ray allowed him to go into the house and eat some meatballs. He testified that he then went into the house, ate the meatballs on the stove, and took M.P.'s backpack and alcohol.

¶7        Arellano told the jury that when the arresting officer confronted him, he initially said he was not from this world, he was from hell, and he was the devil. He also testified that he broke his hand with a rock earlier that day so God would forgive him and let him out of hell. Because Arellano had a splint on his hand the night of the burglary, he claimed he could not have committed the crime because was unable to hold a knife.

¶8        The jury found Arellano guilty as charged. It also found that the State proved, beyond a reasonable doubt, four aggravating circumstances for the first-degree burglary and two aggravating circumstances for the aggravated assault. The trial court found that

Arellano had nine prior out-of-state felony convictions and sentenced him as a category three repetitive offender. It sentenced Arellano to slightly aggravated concurrent terms of 18 years for the burglary and 14 years for the aggravated assault.

**DISCUSSION**

¶9          The record reveals sufficient evidence upon which the jury could determine that Arellano is guilty of the charged offenses beyond a reasonable doubt. The record further reflects that all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, that Arellano was represented by counsel at all stages of the proceedings, and that he was present at all critical stages. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel); *State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). At sentencing, Arellano had the opportunity to speak on his behalf and the court stated on the record the factors it considered in imposing the sentence. *See* Ariz. R. Crim. P. 26.9, 26.10. The sentence was within statutory limits. *See* A.R.S. §§ 13-701 to -709.

¶10          Arellano's supplemental brief raises no issues of fundamental error, as they are either not properly before us or are without merit. His brief contains ineffective assistance of counsel claims, but those claims "are to be brought in Rule 32 proceedings" and may not be considered on direct appeal. *State ex rel. Thomas v. Rayes*, 214 Ariz 411, 414, ¶ 16 (2007) (quoting *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002)). He also contends the trial court had an agenda to find him guilty and that the State coached M.P.'s testimony. The record does not support these claims.

¶11          Arellano challenges the trial court's evidentiary ruling concerning the body cam footage. Because we review the trial court's ruling for fundamental error, the ruling must have prejudiced Arellano. *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018); *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005). Assuming, without deciding, the trial court erred here, Arellano has not demonstrated prejudice for two reasons. First, Arellano sought to introduce the body cam footage to show he was mentally unsound during his arrest, but his mental state is irrelevant to the charged crimes. A.R.S. §§ 13-2014, -1508.  Second, Arellano elected to testify at trial, and he recounted to the jury the same statements he sought to introduce through the body cam footage. Arellano has thus failed to show that "a reasonable jury could have plausibly and intelligently returned a different verdict" absent the trial court's alleged error. *Escalante*, 245 Ariz. at 144, ¶ 31.

**¶12**       Finally, Arellano argues the trial court erred in its sentence by considering an out-of-state prior felony conviction that was more than ten years old at the time of the crime. We disagree. The trial court sentenced Arellano as a category-three repetitive offender, which requires a showing of two historical prior felony convictions. A.R.S. § 13-703(C). It found that Arellano had nine prior out-of-state felony convictions. Under A.R.S. § 13-105(22), if a defendant has been convicted of more than two out-of-state felonies, then the third and each additional out-of-state felony are considered historical priors, regardless of when those crimes were committed. *State v. Johnson*, 240 Ariz. 402, 405, ¶ 14 (App. 2016). The trial court did not err in its sentencing by considering out-of-state prior felony convictions that were more than ten years old.

## CONCLUSION

**¶13**       This Court has read counsel's brief and searched the record for reversible error but has found none. *Leon*, 104 Ariz. at 300; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). Accordingly, we affirm Arellano's convictions and sentences.

**¶14**       Upon filing of this decision, defense counsel is directed to inform Arellano of the status of the appeal and his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an appropriate issue to submit to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Arellano has 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA