NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAUL RUDY GONZALES, *Appellant.*

No. 1 CA-CR 19-0654
FILED 11-24-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-006214-001
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas Baird
*Counsel for Appellant*

Raul Rudy Gonzales, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S**, Judge:

¶1        Raul Rudy Gonzales appeals his conviction for one count of misconduct involving weapons. Gonzales's counsel filed this appeal in accord with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Gonzales's counsel searched the record and identified no arguable, non-frivolous question of law. Counsel, therefore, asks this court to review the record for reversible error. Gonzales filed a supplemental brief *in propria persona*, which this court considered. Based on our review, we affirm Gonzales's conviction and sentence but vacate the superior court's order requiring him to pay for DNA testing.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        This court views the facts in the light most favorable to sustaining the jury's verdict and resolves all reasonable inferences against Gonzales. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3        C.G. testified to sitting outside a house in Glendale during the early hours of May 17, 2016. Gonzales exited the house and walked down a pathway out of C.G.'s sight. When C.G. followed Gonzales, he told C.G. the police had arrived and directed C.G. to retrieve a handgun Gonzales had thrown under a white car.

¶4        Maricopa County Sheriff's Office (MCSO) deputies were in the area responding to a welfare check for another person. When C.G. saw MCSO vehicles and flashlights, he went in another direction and did not retrieve the handgun. As the deputies returned to their vehicles, they found a black handgun under a white car. The deputies wore gloves as they secured the handgun for impounding at an MCSO facility.

¶5        Approximately a year later, a Glendale police officer was investigating a home invasion and questioned C.G., now in prison, about the handgun. C.G. recounted the incident in which Gonzales left the handgun under the white car. The Glendale officer suspected it was the same handgun used in the home invasion. The officer retrieved the

handgun from the MCSO facility and transported it to a Glendale police station. The handgun was in a sealed bag when the Glendale officer picked it up. The Glendale police did not intermingle the handgun with other evidence associated with Gonzales.

¶6 Glendale police obtained a warrant for buccal swabs from Gonzales. A forensic scientist testified the DNA on the swabs matched the DNA found on the handgun. The likelihood of a DNA match happening at random is extremely low. Gonzales was then charged with one count of misconduct involving weapons.

¶7 Before trial, Gonzales's counsel moved to suppress the buccal swabs, arguing the warrant was invalid because it listed potential crimes for which he had already been acquitted. The superior court denied the motion, noting the warrant listed other potential crimes, supported by the facts in the affidavit, for which the State could still charge Gonzales.

¶8 At trial, a probation officer testified Gonzales was on probation at the time of the alleged offense and was prohibited from possessing a firearm. Gonzales also stipulated the offense for which he was on probation was a felony.

¶9 When the State could not secure an MCSO facility manager's attendance to testify to the handgun's chain of custody, Gonzales's counsel objected. The superior court invited Gonzales's counsel to file a written motion. Gonzales's counsel did not. Gonzales's counsel moved for a Rule 20 judgment of acquittal after the State rested. The superior court denied the motion. Near the end of trial, Gonzales himself—though represented by counsel—orally moved for a mistrial based again on the handgun's chain of custody. The superior court denied his oral motion.

¶10 The jury convicted Gonzales and found he was on probation at the time of the offense. The superior court found Gonzales had four historical prior felonies. The superior court imposed a ten-year sentence—the presumptive for category three offenders—to run consecutively to the sentence in his probation matter. The superior court also ordered Gonzales to undergo DNA testing at his own cost.

¶11 Gonzales timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031, and -4033.A.1.

## ANALYSIS

**¶12**        This court reviews the entire record for reversible error. *State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012). After a diligent search of the entire record, Gonzales's counsel found no arguable question of law. Yet, in his supplemental brief, Gonzales raises numerous issues he asks this court to address, including: (1) several instances of ineffective assistance of counsel; (2) witness tampering by the State; (3) the buccal swap evidence acquired by warrant should be suppressed; and (4) the State did not prove chain of custody of the handgun containing his DNA.

**¶13**        To begin, Gonzales may not raise ineffective assistance of counsel claims in his direct appeal. *See State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007). Instead, Gonzales must present them to the superior court in a post-conviction relief proceeding. *Id.* We, therefore, leave Gonzales to raise these claims in an appropriate proceeding.

**¶14**        Next, we turn to Gonzales's witness-tampering claims. Gonzales presents no evidence the State tampered with witness testimony, procured witness absence, or committed other prosecutorial misconduct. He merely cites portions of the transcript and claims witness tampering at these instances with no factual or legal support. Gonzales does not meet his burden with mere citations to the record. *See State v. Vargas*, 249 Ariz. 186, 190, ¶ 14 (2020) (defendants carry burden to prove multiple instances of prosecutorial misconduct, unobjected to at trial, deprived them of a fair trial).

**¶15**        Moving on to Gonzales's challenge to the evidence from the buccal swab, we find no error. Gonzales claims the warrant was invalid because the potential charges were previously adjudicated. A jury acquitted Gonzales of several listed charges but not all, and the superior court correctly found probable cause of the other crimes based on the affidavit. The warrant sought evidence for ongoing investigations of crimes not yet charged or acquitted. The superior court, therefore, correctly denied Gonzales's motion to suppress the DNA evidence.

**¶16**        Finally, Gonzales argues the State failed to prove an unbroken chain of custody for the handgun. The State's failure to offer testimony from the MCSO facility manager regarding the handling and custody of the handgun did not doom the State's chain-of-custody foundation. *See State v. Hurles*, 185 Ariz. 199, 206 (1996) ("In setting up a chain of custody, the prosecution need not call every person who had an opportunity to come in

contact with the evidence sought to be admitted."). The handgun was in a sealed bag when Glendale police took custody of it and took it to the Glendale station. Though the State did not produce a witness for every link in the chain of custody, the State provided "evidence sufficient to support a finding" that the handgun and the DNA found on it are what the State claims they are. *See State v. Steinle*, 239 Ariz. 415, 420, ¶ 25 (2016) (quoting Ariz. R. Evid. 901(a)). Further, any flaws in the chain of custody of evidence go to its weight, not to its admissibility. *See State v. Gonzales*, 181 Ariz. 502, 511 (1995). Accordingly, no error occurred.

**¶17** In addition to evaluating the arguments raised in Gonzales's supplemental brief, we conducted an independent review of the record for reversible error. *See Leon*, 104 Ariz. at 300; *State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011). The superior court conducted all other proceedings in compliance with the Arizona Rules of Criminal Procedure. Gonzales was present for, and represented by counsel at, all critical stages of the proceedings. *See State v. Bohn*, 116 Ariz. 500, 503 (1977); *State v. Conner*, 163 Ariz. 97, 104 (1990). The jury was properly comprised of eight jurors and three alternates. *See* A.R.S. § 21-102.B. The record shows no evidence of jury misconduct. The superior court properly instructed the jury on the elements of the charged offense, the State's burden of proof, and Gonzales's presumed innocence. Additionally, Gonzales was given an opportunity to speak at sentencing, and the sentence imposed was within the statutory guidelines. *See* Ariz. R. Crim. P. 26.9, 26.10(b)(1); A.R.S. §§ 13-703.J (sentencing range for category three repetitive offender), -708.C (requiring no less than the presumptive sentence if offence is committed while on probation for a felony offence), -708.E (requiring sentence to run consecutively to other sentence for which defendant was on release).

**¶18** The superior court, however, did err by ordering Gonzales to pay the costs associated with his statutorily-required DNA testing. *See* A.R.S. § 13-610.A. Though Gonzales must undergo DNA testing, he is not required to pay for it. *See State v. Reyes*, 232 Ariz. 468, 472, ¶ 14 (App. 2013) ("[B]ecause § 13-610 does not require a convicted defendant to be assessed the cost of his DNA testing, there was no basis for the provision to be imposed."). We, therefore, vacate that portion of Gonzales's sentence.

**CONCLUSION**

**¶19** The portion of the superior court's order requiring Gonzales to pay for the DNA testing is vacated. In all other respects, Gonzales's conviction and sentence are affirmed.

**¶20**   Defense counsel's obligations pertaining to Gonzales's representation in this appeal have ended. Counsel need only inform Gonzales of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).

**¶21**   Gonzales has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.21. This court, on its own motion, also grants Gonzales thirty days from the date of this decision to file an *in propria persona* motion for reconsideration. *See* Ariz. R. Crim. P. 31.20.



AMY M. WOOD • Clerk of the Court
FILED: AA