NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SHARALYN M. STURA, *Appellant.*

No. 1 CA-CR 22-0602
FILED 11-30-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR201800955
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Andrew M. Jacobs joined.

---

**G A S S**, Chief Judge:

**MEMORANDUM DECISION**

¶1        Sharalyn M. Stura filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Stura's counsel searched the record and identified no arguable, non-frivolous question of law. Counsel asks this court to review the record for fundamental error. This court allowed Stura to file a supplemental brief *in propria persona*. She has not. Finding no error in the record, we affirm Stura's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        This court views the facts in the light most favorable to sustaining the jury's verdict and resolves all reasonable inferences against Stura. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998).

¶3        A uniformed state trooper responded to a vehicle blocking traffic. Upon arrival, the trooper discovered Stura in the driver's seat, tied to the steering wheel. Stura told the trooper a home invader kidnapped her from her house. She expressed concerns about the victim, who she said also was at the house during the home invasion. The trooper called the dispatch center, and the center sent an officer to Stura's house for a welfare check. Another officer took Stura to the hospital.

¶4        Meanwhile, at the residence, yet another officer discovered the victim's body in a bed. The victim had a gunshot wound to his left temple. That officer also found a pair of belts looped together and a bloodied knife near the bed.

¶5        After the hospital cleared Stura to leave, she went to the police station with a different officer so she could answer more questions. From then on, several officers began interacting with Stura. One officer gave Stura food and water. At which point, the officers left Stura alone in the interrogation room for about two hours and forty minutes. A detective

returned to the room and asked Stura about the kidnapping and home invasion. By then, Stura had spent ten hours in the presence of various police officers. Stura repeated the story she told at the hospital, and after thirty minutes of further questioning, the detective read Stura her *Miranda* rights. The detective continued to interrogate Stura for about two more hours, when Stura altered her account and confessed to having shot the victim.

¶6        A grand jury indicted Stura on three counts: first-degree murder, tampering with physical evidence, and false reporting. Stura moved to suppress her confession at the police station, arguing her statements were involuntary and unlawfully obtained.

¶7        After an evidentiary hearing, the superior court denied Stura's motion to suppress. The superior court said, under the totality of the circumstances, the police did not coerce Stura's statements.

¶8        The jury found Stura guilty on all three counts. The superior court sentenced Stura to natural life in prison for first-degree murder, one year for tampering with physical evidence, and six months for false reporting. The court imposed consecutive sentences for each count and gave Stura 1,635 days of presentence incarceration credit.

¶9        This court has jurisdiction over Stura's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031 and 13-4033.A.1.

## ANALYSIS

¶10        This court has read and considered counsel's brief, fully reviewed the record for reversible error, and identified none. *See Leon*, 104 Ariz. at 300; *State v. Flores*, 227 Ariz. 509, 512 ¶ 12 (App. 2011). The superior court conducted all the proceedings in compliance with the Arizona Rules of Criminal Procedure.

¶11        Stura was present for, and represented by counsel at, all critical stages of the proceedings. *See State v. Bohn*, 116 Ariz. 500, 503 (1977); *State v. Conner*, 163 Ariz. 97, 104 (1990). The superior court properly impaneled fourteen jurors: twelve plus two alternates. *See* A.R.S. §§ 21-102.A, 13-752.M. The record shows no evidence of jury misconduct. The superior court properly instructed the jury on the elements of each charged offense, the State's burden of proof, and Stura's presumed innocence. The jury returned a unanimous verdict, which the superior court confirmed by polling the jury. Additionally, the superior court allowed

Stura to speak at sentencing, and the sentence imposed was within the statutory guidelines. *See* Ariz. R. Crim. P. 26.9, 26.10(c)(1); A.R.S. §§ 13-702, -752.A.

I.    Denial of Motion to Suppress

**¶12**    When reviewing the superior court's decision to deny Stura's motion to suppress, we noted the delay in advising Stura of her *Miranda* rights after she was at the police station, and perhaps while in custody. The police are required to provide a *Miranda* warning to individuals in custody. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). To determine whether someone is in custody when questioned by a law enforcement officer, courts consider the totality of circumstances. *Stansbury v. California*, 511 U.S. 318, 322 (1994). At bottom a court must determine "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (cleaned up). And, whether a reasonable individual would perceive themselves as being under a level of police custody associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

**¶13**    Stura may have been in custody when she arrived at the police station and the police locked her in an interrogation room. The police restricted her from making calls and completely isolated her from her family and friends. Also, the focus of police questioning shifted from kidnapping to Stura's relationship with the victim. The police questioned Stura for ten hours before reading her the *Miranda* rights.

**¶14**    In the pursuit of justice, the better practice is for interrogating officers to administer *Miranda* warnings sooner rather than later. *Cf. McClure v. State*, 803 N.E.2d 210, 214 n.3 (Ind. Ct. App. 2004) (noting, despite holding that *Miranda* warnings were not a prerequisite to the admission of a statement the defendant made in the back of a police car, it would be "best practice" in a similar situation "to advise the defendant of the *Miranda* warnings when he is initially placed in custody."); *State v. Schultz*, 212 P.3d 150, 155–56 (Kan. 2009) (explaining that "the wisest course" for officers taking the defendant into custody would have been to read *Miranda* warnings as soon as they restricted his free movement and before they began to ask questions). That said, the officers' testimony here suggests they perceived Stura as a victim rather than as a suspect for most of the ten hours. And it is unclear precisely when they began to perceive Stura as a suspect.

¶15        The purpose of the *Miranda* warning is to protect the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Here, the officers learned of the victim's murder as soon as they arrived at Stura's house. They concealed their knowledge of the murder from Stura as they questioned her for ten hours. Further, the officers continuously questioned Stura until she changed her story. In the pursuit of justice, hindsight supports as preferable the practice of administering the *Miranda* warning to Stura at an earlier stage. That simple act would have ensured Stura understood her rights during the interrogation.

¶16        Though the ten-hour delay drew our attention, we conclude the superior court did not abuse its discretion in finding her statements admissible.

**CONCLUSION**

¶17        We affirm Stura's convictions and sentences.

¶18        Defense counsel's obligations pertaining to Stura's representation in this appeal have ended. Unless counsel finds an issue appropriate for submission to the Arizona Supreme Court in a petition for review, defense counsel need only inform Stura of the outcome of this appeal and her future options. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).

¶19        Stura has 30 days from the date of this decision to proceed, if she wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.21(b)(2)(A). This court, on its own motion, also grants Stura 30 days from the date of this decision to file an *in propria persona* motion for reconsideration. *See id.*

