NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MARVIN RAY DANIELS, JR., *Appellant*.

No. 1 CA-CR 23-0032
FILED 4-11-2024

Appeal from the Superior Court in Maricopa County
No. CR2019-007244-001
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Mercer Law, PLC, Mesa
By Stephen N. Mercer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Paul J. McMurdie joined.

---

**W I L L I A M S**, Judge:

¶1        Defendant Marvin Ray Daniels Jr. appeals his convictions and sentences for one count of first-degree murder and one count of aggravated assault with a deadly weapon. Daniels' counsel filed a brief per *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising us there are no meritorious grounds for reversal. Daniels was given an opportunity to file a supplemental brief *in propria persona* but did not do so. After reviewing the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), we affirm Daniels' convictions and sentences.

## FACTUAL[1] AND PROCEDURAL HISTORY

¶2        Daniels and Sam[2] had known each other since high school and were both street gang members. Daniels was a member of a South Phoenix street gang known as the Lindo Park Crips. Sam previously had ties to that gang.

¶3        Each year, a football game is played at Lindo Park on Thanksgiving morning (the "turkey bowl"). Community members attend and/or participate in the game, as do members of the Lindo Park Crips. In 2019, in the days leading up to the game, Daniels made several Facebook posts about the turkey bowl and his intentions to attend.

¶4        On Thanksgiving morning, Sam asked his mother to take him to the park for the game. She agreed. On the way, they stopped and picked up Sam's friend Ben.[3] As soon as Sam's mother dropped the two friends off

---

[1] "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996).

[2] We use a pseudonym to protect the victim's privacy. *See* Ariz. R. Sup. Ct. 111(i).

[3] A pseudonym.

at the park, Daniels and others (who were allegedly also Lindo Park Crips) quickly approached. A fight ensued. Daniels hit Ben in the head with a handgun. Sam's mother then watched as Daniels shot her son. Then, as Sam lay face down on the pavement, Daniels stood over him and shot him in the back of the head.

¶5 By the time officers responded, Daniels was gone. However, police found 11 shell casings from a .40 caliber handgun and 5 more from a 9mm handgun. Daniels later admitted he owned a .40 caliber handgun before the shooting.

¶6 That evening, Daniels slept at the apartment of his brother's friend. When the friend told Daniels the following morning that undercover officers were outside, Daniels left the apartment and continued to evade police. He left Phoenix with two women (both of whom he was romantically involved with), and the three made plans to go to Chicago. On their way, however, police stopped their vehicle about 3 hours outside of Phoenix. Officers found Daniels hiding in the trunk of the car.

¶7 At trial, Daniels testified that he was not at the turkey bowl on Thanksgiving morning but was instead selling drugs in Tempe. However, he offered no other evidence to support his version of his whereabouts.

¶8 The jury convicted Daniels of one count of first-degree murder and one count of aggravated assault with a deadly weapon. The trial court sentenced him as a dangerous, non-repetitive offender to natural life in prison for first-degree murder and 7.5 years for aggravated assault (with credit for 735 days of presentence incarceration).

¶9 Daniels timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

¶10 Our review reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). A person commits first-degree murder if "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation." A.R.S. § 13-1105(A)(1). A person commits aggravated assault with a deadly weapon by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person" while using a deadly weapon or dangerous instrument.

A.R.S. § 13-1203(A)(1); A.R.S. § 13-1204(A)(2). The record contains sufficient evidence upon which the jury could determine beyond a reasonable doubt that Daniels was guilty of those offenses.

¶11      Further, all the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Daniels was represented by counsel at all stages of the proceedings and was present at all critical stages including the entire trial, the rendering of the verdict, and sentencing. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages) (citations omitted); *State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). The jury was properly comprised of twelve jurors, and the record shows no evidence of juror misconduct. *See* A.R.S. § 21-102; Ariz. R. Crim. P. 18.1(a). The trial court properly instructed the jury on the elements of the charged offenses, the State's burden of proof, and Daniels' presumption of innocence. At sentencing, Daniels was given an opportunity to speak, and the court stated on the record the evidence and materials it considered, including the factors it found, in imposing the sentences. *See* Ariz. R. Crim. P. 26.9, 26.10. Additionally, the sentences imposed were within the statutory limits. *See* A.R.S. §§ 13-701 through -718 (as applicable).

## CONCLUSION

¶12      We affirm Daniels' convictions and sentences. Defense counsel's obligations pertaining to Daniels' representation in this appeal have ended. Counsel need do no more than inform Daniels of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).

¶13      Daniels has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review to the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.21. Upon this Court's own motion, we also grant Daniels thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.

