NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ERIN ZION HAYES, *Appellant*.

No. 1 CA-CR 24-0537

FILED 11-25-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-157673-001
The Honorable Stasy D. Avelar, Judge

**AFFIRMED**

COUNSEL

Bain & Lauritano, P.L.C., Glendale
By Amy E. Bain
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

---

**W I L L I A M S**, Judge:

¶1        Defendant Erin Zion Hayes appeals his conviction and sentence for aggravated assault. Hayes' counsel filed a brief per *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising there are no meritorious grounds for reversal. Hayes was given an opportunity to file a supplemental brief *in propria persona* but did not do so. After reviewing the entire record for fundamental error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the conviction and resolve all reasonable inferences against Hayes. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3        Using social media and text messaging, the victim arranged a meeting with an unknown person to purchase a Springfield XD 40 handgun for $600. When he arrived at the agreed-upon location for the transaction—an apartment complex parking lot—the victim notified the seller of his arrival via text.

¶4        After briefly waiting in his vehicle with friends, the victim stepped out, alone, and saw two men wearing beanies walking toward him—one a tall, lean man and the other a short, "chubbier" man. The victim briefly spoke with the taller man who then showed him a gun.

¶5        While the victim engaged with the taller man, the shorter man "reached out his hand." Understanding the gesture as a demand for payment, the victim gave the shorter man $600. With the money in hand, the shorter man said to the taller man, "let's bounce." At that point, the taller man placed a clip in the gun and shot the victim's right leg. The men fled the parking lot and the victim's friends drove him to a nearby hospital where he received medical care.

¶6        Shortly thereafter, plain-clothes detectives responded to reports of the shooting and walked the premises of the apartment complex searching for anyone matching the suspects' descriptions. Unable to find

any suspects, the detectives surveilled the apartment complex. Before long, they saw a man, D.B., walk the length of the apartment complex parking lot to the precise site of the shooting, where he picked up a shoe from the ground. The detectives immediately detained D.B.

¶7         During the ensuing investigation, the detectives searched the vehicle D.B. drove to the apartment complex and recovered a black beanie and a spent shell casing. D.B. reported that Hayes had called him and asked him to retrieve a shoe that purportedly had been lost during a "fight." D.B. recounted that Hayes provided him with both the car he drove to the apartment complex, and specific instructions for the location of the shoe.

¶8         The detectives also spoke with the victim and his friends who had accompanied him to the hospital. When police presented the friends with photo lineups, two of them independently identified Hayes as the shooter. A third friend and the victim, however, did not recognize anyone from the photo lineups.

¶9         Eleven days after the shooting, detectives executed a search warrant on Hayes' apartment. They recovered a magazine containing two rounds from under a litter box and a Springfield XD 40 handgun from a tub of cat food.

¶10         The State charged Hayes with one count of aggravated assault.[1] The State also alleged aggravating circumstances and that Hayes had a prior felony conviction.

¶11         At trial, the victim identified Hayes as the shooter, stating he recalled the shooter's face. Two of the victim's friends also identified Hayes as the shooter during their testimony.

¶12         A jury found Hayes guilty of aggravated assault. After the jurors' rendered their verdict, Hayes admitted the aggravating factors alleged by the State: (1) the aggravated assault caused physical, emotional, or financial harm to the victim; (2) he was convicted of another felony within the ten years preceding his commission of the aggravated assault; (3) he previously served a prison sentence; (4) he was on community supervision when he committed the aggravated assault; and (5) he used and discharged a handgun during his commission of the aggravated assault.

---

[1]         Although the State charged Hayes with one count of misconduct involving weapons, that count was later dismissed.

**¶13** Hayes timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶14** A review of the record confirms that all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Hayes was at all times represented by counsel and was present at all critical stages of the proceedings, including the trial and verdict. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages); *see also State v. Bohn*, 116 Ariz. 500, 503 (1977) (right to be present at critical stages). The jury appropriately consisted of eight jurors; and the record shows no evidence of juror misconduct, A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). The trial court properly instructed the jury of Hayes' presumption of innocence, the State's burden of proof, and the elements of the charged offense. At sentencing, Hayes was given an opportunity to speak, and the court stated on the record the evidence and materials it considered and the factors it found in imposing the sentence. *See* Ariz. R. Crim. P. 26.9, 26.10. Additionally, the sentence imposed was within statutory limits. *See* A.R.S. §§ 13-701, -704(A).

**¶15** Our review of the entire record reveals no fundamental error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). Therefore, we affirm Hayes' conviction and sentence.

## CONCLUSION

**¶16** We affirm. Defense counsel's obligations pertaining to Hayes' representation in this appeal have ended. Defense counsel need do no more than inform Hayes of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On this court's motion, Hayes has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* motion for reconsideration or petition for review.

