IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Petitioner/Cross-Respondent*,

*v.*

MICHAEL EUGENE TRAVERSO, *Respondent/Cross-Petitioner*.

No. 1 CA-CR 22-0174 PRPC
FILED 9-26-2023
AMENDED PER ORDER FILED 9-27-2023

Petition for Review from the Superior Court in Maricopa County
No. CR2006-160536-001
The Honorable Katherine Cooper, Judge

**REVIEW GRANTED; PETITION FOR RELIEF GRANTED; CROSS-PETITION FOR RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel Strange
*Counsel for Petitioner/Cross-Respondent*

Kimerer Law Group PC, Phoenix
By Michael D. Kimerer
*Co-Counsel for Respondent/Cross-Petitioner*

Jones Skelton & Hochuli PLC, Phoenix
By Lori L. Voepel
*Co-Counsel for Respondent/Cross-Petitioner*

Law Office of Randal B. McDonald, Phoenix
By Randal B. McDonald
*Co-Counsel for Respondent/Cross-Petitioner*

_____

**OPINION**

Judge Cynthia J. Bailey delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma joined.  Chief Judge David B. Gass concurred in part and dissented in part.

**B A I L E Y**, Judge:

**¶1**         Ten years after his first petition for post-conviction relief ("PCR") was dismissed, Michael Traverso filed a second PCR petition under Arizona Rule of Criminal Procedure ("Rule") 32 alleging ineffective assistance of counsel ("IAC") during plea bargaining and that he was completely deprived of counsel as provided in *United States v. Cronic*, 466 U.S. 648 (1984).  He also alleged that he had provided evidence "sufficient to establish that no reasonable fact-finder" would find him guilty beyond a reasonable doubt.  *See* Ariz. R. Crim. P. 32.1(a), (h).

**¶2**         The superior court determined that the claims were colorable, not precluded, and that Traverso had adequately shown he was not at fault for their delayed assertion.  After an evidentiary hearing, the court granted relief to Traverso on his IAC and *Cronic* claims but denied relief on his Rule 32.1(h) innocence claim.  The State petitions for review of the decisions granting relief on the IAC and *Cronic* claims and from procedural rulings on his Rule 32.1(h) innocence claim.  Traverso cross-petitions for review from the court's denial of relief on his Rule 32.1(h) innocence claim.  We grant review of both petitions and for the reasons below, we grant relief to the State and deny relief to Traverso.

**FACTS AND PROCEDURAL HISTORY**

**¶3**         In October 2006, the State charged Traverso with six counts of sexual conduct with a minor and one count of public sexual indecency to a minor.  After trial, the jury convicted Traverso as charged.  The superior court sentenced Traverso to 79.5 years' imprisonment—minimum 13-year terms on the six counts of sexual conduct with a minor and a presumptive 1.5-year term on the indecency count, all running consecutively.  This court affirmed the convictions and sentences on direct appeal.  *State v. Traverso*, 1 CA-CR 07-0533, 2008 WL 4990566 (Ariz. App. Nov. 20, 2008) (mem. decision).

**¶4**         In 2009, Traverso timely filed his first PCR petition asserting claims of IAC, Rule 32.1(h) innocence, and that his conviction was obtained

with perjured testimony. The superior court summarily dismissed the petition. This court and the Arizona Supreme Court both denied review. Those proceedings ended in 2012.

¶5        In 2020, more than ten years after filing his first PCR petition, Traverso filed this successive PCR petition, reasserting a Rule 32.1(h) innocence claim and raising a different IAC claim, this time based on counsel's alleged failure to advise Traverso about a plea offer he would have accepted. *See* Ariz. R. Crim. P. 32.1(a), (h). The superior court rejected the State's arguments that the claims were precluded and untimely, ruling both were colorable and merited an evidentiary hearing. The court also allowed Traverso to amend his petition to add a claim that he was completely deprived of counsel under *Cronic*.

¶6        At a two-day evidentiary hearing, the superior court heard testimony from Traverso, his wife at the time of the offenses, the prosecutor who charged the case and proposed the plea agreement, the two attorneys who represented Traverso at trial, and the psychiatrist who evaluated Traverso in connection with a release hearing. The court also heard testimony from an expert witness on standards and practices for defense attorneys in the plea context.

¶7        After taking the matter under advisement, the superior court granted relief on Traverso's IAC and *Cronic* claims but denied relief on his Rule 32.1(h) innocence claim. Given its determination that relief was warranted under the IAC and *Cronic* claims, the court vacated Traverso's convictions and sentences and ordered the State to reoffer the plea. The parties timely petitioned and cross-petitioned for review. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") section 13-4239(C), and grant review of the petition and cross-petition, Rule 32.16(k).

## DISCUSSION

¶8        We review the superior court's PCR rulings for an abuse of discretion. *State v. Bigger*, 251 Ariz. 402, 407, ¶ 6 (2021). We review the court's factual findings for clear error and its legal determinations, including its interpretation and application of Rule 32, *de novo*. *State v. Pandeli*, 242 Ariz. 175, 180, ¶¶ 3–4 (2017). We will not reverse the court's decision "if it is legally correct for any reason." *State v. Roseberry*, 237 Ariz. 507, 508, ¶ 7 (2015).

I. The superior court erred by finding Traverso's IAC claim was not precluded.

  A. Preclusion is required under *Stewart v. Smith.*

**¶9**  A defendant is precluded from raising an IAC claim that was "waived at trial or on appeal, or in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). In *Stewart v. Smith*, the United States Supreme Court certified the following question to the Arizona Supreme Court: "[I]n 1995, did the question [of] whether an asserted claim was of 'sufficient constitutional magnitude' to require a knowing, voluntary and intelligent waiver for purposes of Rule 32.2(a)(3) . . . depend upon the merits of the particular claim . . . or merely upon the particular right alleged to have been violated?"[1] 202 Ariz. 446, 447, ¶ 1 (2002).

**¶10**  Our supreme court answered: "[W]hether an asserted ground is of 'sufficient constitutional magnitude' to require a knowing, voluntary and intelligent waiver . . . depends merely upon the particular right alleged to have been violated." *Id.* at 450, ¶ 10. In doing so, however, the court stated, "With some petitions, the trial court need not examine the facts. For example, if a petitioner asserts [IAC] at sentencing, and, in a later petition, asserts [IAC] at trial, preclusion is required without examining facts." *Id.* at ¶ 12. The court then stated, if petitioner asserts IAC "for the *first time* in a successive Rule 32 petition, the question of preclusion is determined by the nature of the right allegedly affected by counsel's ineffective performance. If that right is of sufficient constitutional magnitude to require personal waiver by the defendant and there has been no personal waiver, the claim is not precluded." *Id.* (emphasis added).

**¶11**  Traverso argues the language in *Stewart* requiring preclusion of an IAC claim in a successive PCR petition when the defendant has already raised an IAC claim in an earlier petition is dicta and is not binding. The State counters the language is not dicta, but "a definitive statement of law" that is a "specific exception to the rule otherwise being set forth." While *Stewart*'s statement on preclusion was unnecessary for the court to

---

[1] The 1995 version of Rule 32.2(a)(3) provided the exception to preclusion of claims that required the defendant's personal waiver in a comment to the rule and the current version expressly incorporates this exception into the text of the rule. There is, however, no substantive difference between the two.

answer the certified question before it, we agree with the State that the best reading of the language is that the court intended to provide an exception to the rule it established. The court held that generally, in determining whether a post-conviction claim is of sufficient constitutional magnitude to require the defendant's personal waiver, courts should look to the right alleged to have been violated. *Id.* at 447, ¶ 3. But the court expressly stated a specific exception to this rule: when a defendant raises an IAC claim in a successive petition and has already raised a different IAC claim in an earlier petition, preclusion is required, and courts need not determine whether the claim alleges a violation requiring personal waiver. *Id.* at 450, ¶ 12.

**¶12** And even if *Stewart*'s preclusion requirement were dicta it was intended to provide future guidance in applying the rule set out and thus "should be followed in the absence of some cogent reason for departing" from it. *See State v. Fahringer*, 136 Ariz. 414, 415 (App. 1983); *see also Resolution Tr. Corp. v. Segel*, 173 Ariz. 42, 44 (App. 1992) (noting that when our supreme court intends to guide future conduct, "[t]his court must follow the direction given by the supreme court."). Traverso's claim is directly implicated by the *Stewart* conclusion and cannot be distinguished. Nor has any intervening change in the law called into question *Stewart*'s analysis. That another possible construction of Rule 32.2(a)(3) would not require automatic preclusion of successive IAC claims is not a cogent reason to depart from our supreme court's clear guidance requiring preclusion in *Stewart*.

**¶13** The dissent reasons that because *Stewart* relied on cases discussing the pre-1992 version of Rule 32.2(a)(3), its per se rule that successive IAC claims are precluded does not apply. *Infra*, ¶ 83. Though *Stewart* cited pre-1992 cases, it applied the post-1992 rule. 202 Ariz. at 448–50, ¶¶ 8–12 (applying 1995 version of Rule 32.2). And it recognized the general rule the dissent advocates—IAC claims raised in a successive petition are not precluded if the underlying right implicated required the defendant's personal waiver. *Id.* at 449–50, ¶¶ 8, 12. But *Stewart* also created an exception to this general rule, requiring preclusion of a successive IAC claim in a successive petition, without looking to the underlying facts. *Id.* at 450, ¶ 12. Applying that exception here, Traverso's claim is precluded.

      B.    Preclusion applies because Traverso's IAC claim does not implicate a right requiring his personal waiver.

**¶14** Even if we were not bound to follow *Stewart*'s per se rule, Traverso's claim is still precluded under Rule 32.2(a)(3). Whether an IAC

claim raised in a successive PCR petition is precluded depends on "the nature of the right allegedly affected by counsel's ineffective performance." *Id.*; *see also State v. Diaz*, 236 Ariz. 361, 362, ¶ 9 (2014). Only if the affected right is of "sufficient constitutional magnitude" must the defendant make a knowing, voluntary, and intelligent waiver of the claim for preclusion to apply. *Stewart*, 202 Ariz. at 450, ¶ 12; *Diaz*, 236 Ariz. at 362, ¶ 9. If not, the successive claim is precluded. *Stewart*, 202 Ariz. at 450, ¶ 12; Ariz. R. Crim. P. 32.2(a)(3).

¶15 Traverso asserts that the right implicated by his IAC claim is "the right to be effectively counseled once the State offers a plea" and this right required his personal waiver. But every IAC claim necessarily alleges a violation of the right to effective counsel and our supreme court has repeatedly held that whether the defendant's personal waiver is required for an IAC claim to be precluded turns on the right affected by counsel's performance, not the general allegation of ineffective counsel. *Stewart*, 202 Ariz. at 450, ¶ 12; *Diaz*, 236 Ariz. at 362, ¶ 9.

¶16 The dissent urges that the underlying right here is "the right to knowingly, voluntarily, and intelligently accept the plea offer the prosecution offered." *Infra*, ¶ 94. But when faced with an IAC claim that "trial counsel's ineffective assistance led [the defendant] to reject the State's plea offers and proceed to trial," our supreme court held that the underlying right affected by counsel's ineffective performance was the "right to a plea bargain." *Diaz*, 236 Ariz. at 362, ¶¶ 5, 9. The court then held that the claim did not require the defendant's personal waiver because "defendants do not have a constitutional right to a plea bargain." *Id.* at ¶ 9. Traverso's IAC claim is the same claim made by the defendant in *Diaz* and thus did not require his personal waiver for preclusion to apply. *Id.*

¶17 *Diaz*'s holding that an IAC claim like Traverso's does not require the defendant's personal waiver is not dicta. *See infra*, ¶ 89. The dispute in *Diaz* was whether the defendant's IAC claim based on deficient advice regarding a plea bargain was waived and therefore precluded. *Diaz*, 236 Ariz. at 362, ¶¶ 5–6. If such a claim required the defendant's personal waiver, it would not be precluded. *Id.* at ¶¶ 8–9; Ariz. R. Crim. P. 32.2(a)(3). Whether this IAC claim implicated a right that could only be waived personally was thus directly at issue in *Diaz*. And the court held no personal waiver was required. *Id.* at ¶ 9. Only then did it go on to hold that the defendant did not waive his claim based on his attorney's failure to timely file any petition. *Id.* at 363, ¶¶ 10–13. Thus, the court's determination that the defendant's IAC claim did not require personal

6

waiver was necessary to its decision and we are bound to follow it. *See Fahringer*, 136 Ariz. at 415.

**¶18**     The dissent also reads *Diaz* to hold that an attorney's failure to raise a valid IAC claim cannot prevent a defendant from later raising that claim, in essence creating a general ineffective assistance of PCR counsel exception to waiver and preclusion. *Infra*, ¶ 88. But *Diaz* does not sweep that broadly. In *Diaz*, the defendant filed a PCR notice, but his attorney did not file a PCR petition raising his IAC claim. *Diaz*, 236 Ariz. at 362, ¶¶ 3–5. Thus, the "successive" petition in *Diaz* was in fact the *first* petition ever filed. *Id.* at 363, ¶ 12. Our supreme court thus held that the defendant did not waive his IAC claim because, through no fault of his own, he had no opportunity to raise it in *any* petition. *Id.* at ¶ 13. But *Diaz* did not hold that any time an attorney unilaterally fails to raise an IAC claim in a petition, that claim can be brought in a successive petition. Rather, the court reaffirmed that "PCR counsel can waive most claims of trial error on the defendant's behalf by failing to assert them in a PCR petition," *id.* at 362, ¶ 8, and "[p]reclusion is designed to 'require a defendant to raise all known claims for relief in a *single petition*," *id.* at 363, ¶ 12 (emphasis added) (quoting *State v. Petty*, 225 Ariz. 369, 373, ¶ 11 (App. 2010)).

**¶19**     Here, in 2010, Traverso filed a prior PCR petition in which he could have raised this IAC claim. Because his attorney did not raise the claim and it did not require his personal waiver, he waived the claim and is precluded from bringing it in this successive petition brought a decade later. *See* Ariz. R. Crim. P. 32.2(a)(3).

>          C.     Preclusion is not excused here.

**¶20**     Traverso argues that preclusion of his IAC claim should be excused because his first PCR counsel was ineffective, and he asserted a credible innocence claim.

**¶21**     In arguing that preclusion should be excused because his first PCR counsel was ineffective, Traverso relies on *State v. Mendoza*, 249 Ariz. 180 (App. 2020) and *Martinez v. Ryan*, 566 U.S. 1 (2012). But neither case affords Traverso relief. In *Mendoza*, the defendant pled guilty. 249 Ariz. at 182, ¶ 2. A pleading defendant is "constitutionally entitled to the effective assistance of counsel on his first [of-right] petition for [PCR], the counterpart of a direct appeal." *State v. Pruett*, 185 Ariz. 128, 131 (App. 1995). But Traverso, who went to trial and had a direct appeal, with a corresponding right to counsel on that direct appeal, has no such PCR right. *See State v. Escareno-Meraz*, 232 Ariz. 586, 587, ¶ 4 (App. 2013). And *Martinez*

held only that inadequate counsel on a first PCR petition can prevent procedural default of an IAC claim in *federal* habeas proceedings. 566 U.S. at 9. It did not extend that logic to *state* procedural rules precluding *state* post-conviction relief claims. *Martinez* thus does not entitle Traverso to raise his precluded IAC claim. *See State v. Evans*, 252 Ariz. 590, 597, ¶ 25 (App. 2022) (noting *Martinez* "does not entitle [a criminal defendant] to raise precluded state [IAC] claims"). Traverso cannot rely on a claim that his first PCR counsel was ineffective to avoid preclusion.

**¶22** Nor does Traverso's claim of a "credible showing of actual innocence" avoid preclusion. The cases Traverso relies on establish that in a *federal* habeas proceeding a defendant can have otherwise procedurally barred claims heard on the merits on a showing that "it is more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). But Arizona has no such corollary rule for precluded state post-conviction claims. Rather, "Arizona recognizes a free-standing claim of actual innocence as outlined in Rule 32.1(h)." *Evans*, 252 Ariz. at 598, ¶ 30. And as discussed below, the superior court properly found Traverso did not prove his Rule 32.1(h) innocence claim on the merits. *See infra*, ¶ 39.

**¶23** In sum, *Stewart* and Rule 32.2(a)(3) required preclusion of Traverso's IAC claim and the superior court erred by not dismissing the claim as precluded. Given this conclusion, we do not address the State's arguments that the claim should have been dismissed as untimely.

II.     The superior court erred by finding Traverso's *Cronic* claim colorable.

**¶24** In *Cronic*, the United States Supreme Court held that the Sixth Amendment right to assistance of counsel can, in certain limited circumstances, be so impaired that prejudice is presumed. 466 U.S. at 658 ("There are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."). The court described three such limited circumstances: (1) a "complete denial of counsel" at a "critical stage" of the proceedings, (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when even competent counsel would be unlikely to provide effective assistance. *Id.* at 659–60 & n.25. Outside those limited circumstances, a defendant must meet *Strickland*'s standards for deficient performance and resulting prejudice to prove a Sixth Amendment violation of the right to

effective assistance of counsel. *See id.* at 659 n.26 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

¶25     Under the circumstances here, Traverso's *Cronic* claim required him to show a complete actual or constructive denial of counsel during plea negotiations. *See Strickland*, 466 U.S. at 692 (remarking that a presumption of prejudice under *Cronic* is found in cases of "[a]ctual or constructive denial of the assistance of counsel altogether" or "various kinds of state interference with counsel's assistance"). The facts he alleged, and the record presented, do not make such a showing.

¶26     The *Cronic* court described two situations in which a "complete denial of counsel" has been found: (1) where counsel is "totally absent" and (2) where counsel is "prevented from assisting the accused." 466 U.S. at 659 n.25.

¶27     Traverso's attorneys were not actually, or effectively, absent, or prevented from assisting him. Nor did his attorneys act as a "neutral observer." *See infra*, ¶ 70. Traverso's petition alleged that, though his attorneys did not show him the written offer or discuss its material terms, one of his attorneys mentioned the plea offer to him after a release hearing, stating it was "ridiculous and the case had to go to trial." Traverso's attorney thus advised him, at least minimally, about the plea offer. Significantly, Traverso offers no case finding a *Cronic* violation on similar facts.

¶28     By contrast, courts routinely evaluate deficient representation in plea negotiations under the *Strickland* framework. *Missouri v. Frye*, 566 U.S. 134 (2012), is telling. In that case, defense counsel did not inform the defendant about a plea offer, which then expired. *Id.* at 138–39. The *Frye* court evaluated those circumstances in accordance with *Strickland* and held that a defendant in such a situation must prove prejudice by "demonstrat[ing] a reasonable probability" that the defendant would have accepted the plea and that it would have been accepted and implemented. *Id.* at 147–48. Although the *Frye* court did not expressly reject *Cronic*'s application, that the court did not presume prejudice from defense counsel's wholesale failure to inform the defendant of a plea offer suggests it did not view the circumstances as presenting a complete deprivation of counsel. *Cf. White v. Maryland*, 373 U.S. 59, 60 (1963) (prejudice presumed where defendant is asked to enter plea before being represented by counsel).

¶29         Traverso's petition alleged that his attorney minimally advised him of the existence of the plea offer, more than counsel did in *Frye*. Traverso's challenge to defense counsel's conduct thus should have been limited to an IAC claim under *Strickland*. Because we conclude that the facts alleged by Traverso did not support a colorable *Cronic* claim, we do not address the State's argument that the claim should have been dismissed as untimely.

III.     The superior court did not err by dismissing Traverso's Rule 32.1(h) innocence claim.

¶30         Under Rule 32.1(h), a defendant is entitled to relief if he "demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the defendant guilty of the offense beyond a reasonable doubt . . . ." Ariz. R. Crim. P. 32.1(h).

¶31         The facts underlying Traverso's Rule 32.1(h) innocence claim are as follows: In April 2005, 20-year-old C.W. reported to police that when C.W. was a teenager, Traverso had touched him inappropriately. An officer conducted a videotaped interview of C.W. two months later. In the interview, C.W. explained that his brother committed suicide in November 1998, a few weeks after C.W. turned 14. C.W. disclosed that Traverso then began to sleep in C.W.'s bed and he and Traverso watched pornography and masturbated in front of each other. C.W. then disclosed that, the next summer, while on a trip to San Diego, he and Traverso masturbated each other for the first time. When they returned to Arizona, C.W. said he and Traverso went back to masturbating separately but Traverso would ask C.W. to "do" him. C.W. said he would say no but then relent after Traverso pressured him.

¶32         When the officer asked if C.W. remembered "approximately what month" he first masturbated Traverso in Arizona, C.W. said it was "probably November, December '99." The officer followed up: "Now you turned 15 [in October 1999], so you were 15 when that happened?" C.W. answered yes. The officer then said he was asking these questions because C.W.'s age was "very important" in determining "what to charge"—his being 14 made the offense a "higher class felony," but "[a]fter [he] turned 15 then it becomes a lower class felony." C.W. then told the officer: "It could have been earlier"; it "probably wasn't too far after we got back [from San Diego] that I masturbated him"; and "[i]t didn't just happen once." The officer then asked C.W. "how many times . . . [he and Traverso]

masturbated each other" between late August and his birthday in October 1999. C.W. was silent for a while and never answered.

¶33            The officer arranged for C.W. to make a recorded "confrontation call" to Traverso. During the call, C.W. explicitly stated he and Traverso masturbated in each other's presence and alluded to them touching each other. Traverso made no admissions, but he did not deny C.W.'s accusations. However, no charges were filed against Traverso based on C.W.'s disclosure and the confrontation call.

¶34            C.W. was then interviewed by a different officer more than a year later. The officer began the interview by telling C.W. that because events took place in multiple states, he wanted to establish a "timeline," with dates and C.W.'s age "basically locked in." During the interview, C.W. confirmed his prior statement that he and Traverso first masturbated each other in San Diego in August 1999. The officer asked if C.W. could recall "the first time," in Arizona, that C.W. "had masturbated [Traverso]." C.W. could not remember specific dates or details but said he could "safely" say it happened at least twice a month between when they returned from San Diego and before he turned 15. Later in the interview, C.W. expressed frustration over lack of movement on the case. The officer conveyed that there had been uncertainty about C.W.'s age when various incidents occurred, which impacted the charging decision, but the officer believed there was sufficient information to charge Traverso with serious sex crimes requiring mandatory prison time. When the officer asked if C.W. wanted to prosecute knowing the possible punishment, C.W. responded, "I want to say heck yes."

¶35            After the interview, the officer asked C.W. to write an account of "specific times" that he recalled Traverso touching his penis and vice versa. The statement C.W. prepared expressed more detail and certainty than what he had told police in his interviews. C.W. disclosed, for the first time, in the months after C.W.'s brother died in 1998, Traverso and he masturbated each other, not just themselves. C.W. also described specific incidents in September and October 1999, making clear he was "14 years old" when he and Traverso simultaneously masturbated each other.

¶36            At trial, C.W. testified consistently with this written statement, which was admitted in evidence without objection. The confrontation call was played for the jury. The State offered the testimony of an expert, who explained that child victims often delay disclosure of abuse, disclose abuse in a piecemeal fashion, and rely on script memory. Traverso, who testified on his own behalf, admitted that he slept at C.W.'s

house, that they took trips together, and discussed masturbation, but he denied any sexual conduct between them. Although the defense theory was that C.W. fabricated the allegations, Traverso's counsel did not cross-examine C.W. about his prior interview statements in which he could not recall specific details and showed uncertainty about when the charged conduct occurred.

¶37 In this PCR proceeding, the superior court found that C.W.'s interview statements provided "plausible evidence" that Traverso was not guilty of sexual conduct with a minor under 15 in Arizona. But the court added that jurors would not have considered the interview evidence in isolation, but with the expert testimony the State offered to explain the discrepancies and the testimony that Traverso gave that tracked some aspects of C.W.'s account. The court also noted, "all of the evidence was subject to the jurors' assessment of [C.W.'s] and Traverso's credibility." The court thus concluded that, although "some jurors" would "almost certainly" have found Traverso not guilty, he had not "conclusively demonstrate[d] innocence such that no juror would have convicted him."

¶38 Traverso argues that the superior court's determination that "some jurors" would not have found him guilty establishes a successful claim under Rule 32.1(h). He argues that the court applied the wrong standard when it found he failed to "conclusively demonstrate innocence such that no juror would have convicted him."

¶39 The record supports the superior court's dismissal of Traverso's Rule 32.1(h) innocence claim, and its written ruling does not reflect an inaccurate interpretation or application of the law. The court found, in substance, that an individual juror who considered the police interviews along with other trial evidence could reasonably find Traverso guilty. That finding, in turn, means that a jury could reasonably find Traverso guilty. The court, therefore, properly found that he had not established that "no reasonable fact-finder" would find him guilty beyond a reasonable doubt.

¶40 Because we conclude that the superior court's dismissal of Traverso's Rule 32.1(h) innocence claim was not error, we do not address the State's arguments that the court should have dismissed the claim as precluded and untimely.

**CONCLUSION**

¶41 For these reasons, we accept review of the petition and cross-petition, deny relief to Traverso, and grant relief to the State by reversing

the superior court's orders finding Traverso's IAC claim not precluded, finding his *Cronic* claim colorable, and granting him relief.

**G A S S**, C.J., concurring in part and dissenting in part:

¶42        As to Traverso's actual innocence claim in his second petition for post-conviction relief (PCR), I agree with the majority's analysis and join in that part of the opinion. I also note controlling precedent denies Traverso the right to claim ineffective assistance of first PCR counsel because his second PCR follows a trial. *See State v. Escareno-Meraz*, 232 Ariz. 586, 587 ¶ 4 (App. 2013) (holding there is no constitutional right to counsel in post-conviction proceedings for non-pleading defendants); *State v. Mata*, 185 Ariz. 319, 336–37 (1996) (rejecting "infinitely regressive notion" that "the right to effective counsel on appeal is empty without effective counsel to challenge [previous] appellate counsel's performance").

¶43        I dissent from the holdings on Traverso's claims under *United States v. Cronic*, 466 U.S. 648, 659 (1984), and for ineffective assistance of counsel (IAC). If waiver applies here, Traverso will spend the rest of his life in prison because his trial counsel failed to advise him on a written plea offer at a time and under circumstances when Traverso could understand the plea offer and make a knowing, voluntary, and intelligent decision about whether to accept or reject it.

¶44        According to controlling precedent alone, Traverso was constructively denied counsel and waiver does not apply to his trial counsel's IAC claims. True, dicta from the Arizona Supreme Court suggests waiver should apply to both. But given the serious consequence of waiver, especially given the superior court's factual findings of Traverso's valid *Cronic* and IAC claims following an evidentiary hearing, dicta should not control the outcome here.

¶45        By applying waiver under these circumstances, Arizona courts place concerns about the occasional repetitive PCR petition over justice. If the Arizona Supreme Court intended such a result, it should say so. In the absence of such a statement, I would deny the State's requested relief on the *Cronic* and IAC claim and remand for further PCR proceedings.

**Additional Facts**

¶46        Though I agree with the majority's summary of the facts, I include additional details and context for my analysis.

A. Victim's Interviews and Written Statement

¶47 Traverso's charges stem from the victim's 2005 report to, and interview with, police about Traverso touching the victim inappropriately several years earlier. The victim told the investigating officer Traverso began sleeping over in the victim's bed after the victim's brother committed suicide when the victim was 14 years old. The victim also said he and Traverso began to watch pornography and masturbate in front of each other during that time. But Traverso did not begin touching the victim until they took a trip to California when the victim was still 14. The victim said when he and Traverso returned to Arizona in August 1999, he and Traverso went "back to masturbating [themselves]" but Traverso would try to get the victim to masturbate him, and eventually the victim relented.

¶48 During the interview, the officer asked the victim in what month was the first time he masturbated Traverso in Arizona, and the victim replied it occurred after the California trip, "so August—November, December—probably December 1999, after the [California] trip." The officer then asked, "Now you turned 15 [in October], so you were 15 when that happened?" The victim answered, "yes."

¶49 The officer then said he was asking these questions because the victim's age was "very important" in determining "what to charge—his being 14 made the offense a "higher class felony," but "[a]fter [he] turned 15 then it becomes a lower-class felony." After that, the victim said, "It could have been earlier," adding it "probably wasn't too [long] after we got back [from California]," and "[i]t didn't just happen once." Later, when the officer referred to the first time the victim masturbated Traverso in Arizona, the victim again said, "it could have been earlier." When the officer asked how many times Traverso asked the victim to masturbate him between returning to Arizona and when the victim turned 15, he did not answer.

¶50 A year later, in another interview, the victim confirmed he and Traverso first masturbated each other in August 1999 in California. But the victim could not remember specific dates or details regarding the first time Traverso asked the victim to masturbate him in Arizona. Later, when the victim expressed frustration over the lack of movement in the case, the interviewing officer explained the uncertainty about the victim's age during various incidents. The officer added, he believed sufficient evidence supported charging Traverso with serious sex crimes requiring mandatory prison time. The victim then gave a written statement with more and different details and with more certainty than what he said during his earlier interviews. For example, the victim claimed he and Traverso

14

masturbated each other in Arizona before the California trip and described specific incidents in September and October 1999, adding he was "14 years old" at the time.

B.     Pretrial Proceedings

¶51          At a January 2007 status conference to discuss Traverso's release status, where Traverso was present, the superior court asked the parties about plea negotiations. The State told the superior court it had made a plea offer, the offer was set to expire the next day, and the State believed Traverso rejected the offer because the State had not heard from Traverso's trial counsel. The State then requested a *Donald* advisement. *See State v. Donald*, 198 Ariz. 406, 413 ¶ 14 (App. 2000) ("[O]nce the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer.").

¶52          In the *Donald* advisement, the prosecutor described Traverso's charges and explained each of the six counts of sexual conduct with a minor alleging masturbatory contact has a sentencing range of "13 to 27." The prosecutor added Traverso would have to serve consecutive sentences, "basically 13 times 6, up to 27 times 6." The prosecutor, however, never did the math so Traverso would understand he faced a mandatory minimum prison term of 78 years up to a maximum of 162 years for those counts. The prosecutor added, for the public sexual indecency count, Traverso could receive probation or a presumptive prison sentence of a year and a half, running consecutive to the other sentences.

¶53          The prosecutor then explained the plea offer but did not show the written plea agreement to Traverso. The prosecutor said the plea offer required Traverso to plead guilty to one count of sexual conduct with a minor, with a stipulation to prison "for an open range anywhere between 13 to 27 years." He would also plead guilty to two amended counts of attempted sexual conduct with a minor, with a stipulation to lifetime probation following his release from prison. The State would dismiss counts four through seven, and Traverso would pay restitution to the victim. The State again did not do the calculations and compare the minimum and maximum prison term possible under the plea—13 years up to 27 years—with the minimum and maximum prison term if convicted after trial—79.5 years up to a maximum of 163.5 years.

¶54          During the hearing, Traverso's trial counsel did not clarify the plea offer or explain the realities of the plea offer versus the risk of trial,

15

leaving those critical details to the State. As Traverso later explained, all his trial counsel told him was the plea offer was outrageous and he should reject it.

¶55          The superior court then asked Traverso if he "heard what the plea agreement provides" and "underst[ood] the possible penalties . . . if [he was] convicted." Traverso replied "yes" to both questions. The superior court continued, "My understanding is at this time that you do not want to accept the plea." Traverso responded, "Absolutely not" and "I'm innocent." The superior court then found Traverso "knowingly, intelligently and voluntarily rejected the State's plea offer." At no time did the superior court ask Traverso whether he had discussed the plea offer with his trial counsel.

¶56          During sentencing, Traverso said he "did not understand that [his] charges would be consecutively run so that [he] would have the rest of [his] life in jail" and he had "signed a plea agreement . . . in plenty of time" to resolve his case, but his attorney "would not enter that plea agreement" and Traverso did not "know why." In his later PCR petitions, Traverso explained these statements.

C.          PCR Petitions

1.          First PCR Petition

¶57          In his first PCR petition, Traverso included an affidavit claiming: (1) trial counsel "spoke briefly with [him] in court" and "mentioned that the prosecutor had offered a plea of 13 to 27 years but that it was ridiculous and that the case had to go to trial"; (2) trial counsel "did not show or give [him] a copy of the plea offer at that time"; (3) trial counsel did not explain being convicted would result in mandatory, consecutive prison terms; and (4) he "learned about mandatory sentencing from another inmate at the jail a few days before trial." In its dismissal, the superior court adopted the State's reasoning without identifying or discussing particular claims.

2.          Second PCR Petition

¶58          In the second PCR petition, Traverso said he did not know about the plea offer "until the day of trial when he saw the proposed plea agreement sitting in his attorney's file." He also said it was the first time he understood he faced more than 150 years and then immediately signed the plea and asked his counsel to tell the prosecutor. But the offer had expired by then. Though these statements appear at odds with the *Donald* advisement discussed above, the superior court held an evidentiary hearing

on Traverso's second PCR petition and found Traverso credible on the issue based on the evidence.

¶59        Traverso also claimed he had discussed the plea-related issues with his first PCR counsel and that she declined to raise the claim and told him it would conflict with his other IAC claims. Traverso argued he, thus, did not "'knowingly, voluntarily, and personally' waive his claim or direct his post-conviction counsel not to include [the plea-related IAC] claim in his initial PCR."

¶60        In an attached affidavit, Traverso repeated his claims from the affidavit in his first PCR petition and added: (1) his trial counsel never told him of a written plea offer or any deadlines; (2) his trial counsel never talked to him about the time he faced if convicted until Traverso asked about it on the first day of trial; (3) he signed the plea agreement when he found it; (4) he never told his trial counsel he would not accept a plea; (5) he would have timely accepted the State's offer if his trial counsel explained he could receive a maximum of 27 years under the plea—compared to more than 150 years if convicted after trial; (6) he did not remember receiving a *Donald* advisement and would not have understood it because his trial counsel did not adequately explain the plea offer and because it occurred during a conference set to discuss his release status; and (7) he told his first PCR counsel about the issues with the plea offer and did not intend to waive an IAC claim on that ground.

¶61        During a two-day evidentiary hearing on the second PCR petition, Traverso presented several witnesses who were involved in his prosecution: Traverso himself, his wife at the time, the prosecutor who charged the case and proposed the plea agreement, Traverso's defense counsel for the release hearing, his trial counsel, and the psychiatrist who evaluated Traverso in connection with his 2007 release hearing and again before the evidentiary hearing on his second PCR petition. Traverso also presented testimony from an expert witness on standards and practices for trial defense counsel in the plea context.

¶62        Traverso testified that his trial counsel never discussed mandatory or consecutive sentences with him and did not advise him about the plea offer other than at his release hearing. Traverso said his trial counsel at the release hearing called the plea "outrageous" and told him not to accept it. Because of what his trial counsel said about the plea offer, Traverso said he did not believe it was a "formal offer."

¶63         The attorney who represented Traverso at the release hearing and the attorney who represented him at trial both testified they did not recall a plea offer and had few written records from their time representing Traverso. Evidence showed the State gave or discussed the plea with Traverso's trial counsel at least three different times before Traverso's release hearing. Even so, trial counsel never showed or discussed the plea offer with Traverso before the release hearing. Traverso's expert testified his counsel's conduct fell below the standards of competent defense representation.

¶64         As to the *Donald* advisement, Traverso testified that during the release hearing his mind "went totally blank" after he understood he would not be released. He also said he did not remember the *Donald* advisement. The psychiatrist who evaluated Traverso before the evidentiary hearing testified Traverso's mental disorders, evidence he was not on his normal psychiatric medications at the time, and his preoccupation with release could have prevented him from processing the *Donald* advisement as it was happening or from recalling it later. And regardless of Traverso's psychological state, the expert testified a *Donald* advisement given during the release hearing under the circumstances of this case, without an earlier settlement conference, was unlikely to achieve its intended goal of "mak[ing] sure the defendant understands the plea."

¶65         After the evidentiary hearing, the superior court found, despite the State presenting its plea offer to Traverso's trial counsel on three separate occasions, those attorneys never "gave it to [Traverso], advised him of it, or explained the mandatory sentencing range he faced if convicted versus the range offered in the plea." The superior court also determined his trial counsel's "inadequate communication" was not only constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 688 (1984), but it effectively denied Traverso counsel during a critical stage under *Cronic*, 466 U.S. at 659. The superior court found Traverso's attempt to accept the plea offer on the first day of trial established prejudice under *Strickland*. And the superior court found the *Donald* advisement did not supplant trial counsel's obligation to advise Traverso about the plea offer. It further found the *Donald* advisement was ineffective under the circumstances because it did not include all the plea offer's material terms.

¶66         The superior court found Traverso sufficiently explained why he did not raise the claim earlier and that the "majority of the delay was due to factors beyond Traverso's or counsel's control." Those factors included: (1) Traverso's first PCR counsel unilaterally decided not to raise the claim; (2) it took six years to litigate his direct appeal and first PCR

claims in state and federal courts; and (3) it took time for the second PCR counsel to evaluate the bases for Traverso's second petition. Based on those factors and Traverso's attempt to raise the claim in 2009, the superior court determined his *Cronic* and IAC claims were timely. *See* Ariz. R. Crim. P. 32.4(b)(3)(D) (requiring court to excuse untimely notice of PCR claim on defendant's adequate explanation of non-fault).

## Analysis

IV.     The superior court did not err when it granted relief on Traverso's *Cronic* claim.

¶67     As the majority correctly notes, the Sixth Amendment compels this court to presume prejudice when a defendant is completely denied counsel during a "critical stage of trial." *See Cronic*, 466 U.S. at 659. And "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 141 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).

¶68     The United States Supreme Court has listed a few circumstances requiring the presumption of prejudice, including the "complete denial" of counsel at a "critical stage." *See Cronic*, 466 U.S. at 659–60. In a footnote, the United States Supreme Court also noted in *Chronic* it had "uniformly found constitutional error without any showing of prejudice" when defense counsel was totally absent or from assisting a defendant during a "critical stage of the proceeding." *Id.* at 659 n.25. But neither the list of circumstances requiring a presumption of prejudice nor the historical instances of a complete denial of counsel are exhaustive or restrictive—those lists are merely examples.

¶69     Complete absence of counsel or State interference are not the only prerequisites for presuming prejudice. Indeed, both before and after *Cronic*, Arizona courts have presumed prejudice in several circumstances when counsel was neither absent nor inhibited by the State. *See, e.g., State v. Padilla*, 176 Ariz. 81, 84–85 (App. 1993) (defense counsel disparaging defendant to obtain a better sentence for defendant's wife); *State v. Schultz*, 140 Ariz. 222, 223–24 (1984) (defense counsel failure to interview more than 20 witnesses); *State v. Perkins*, 141 Ariz. 278, 295 (1984) (substitute defense counsel doing no more than acting as "neutral observer" during sentencing); *State v. Cruz*, 137 Ariz. 541, 548–50 (1983) (defense counsel refusal to participate in trial after denial of motion to disqualify the judge).

¶70        The majority compares Traverso's counsel's actions to counsel's failure to present a plea offer to a defendant in *Frye*. *Supra* ¶ 29. The majority concludes Traverso was not completely denied counsel because Traverso's counsel did more than counsel in *Frye*. *Supra* ¶¶ 28–29. But Arizona courts have found some ineffective actions by counsel are inherently prejudicial. And the Arizona Supreme Court has held "[w]hen counsel's acts and decisions approach those of a neutral trial observer, we will presume prejudice." *State v. LaGrand*, 152 Ariz. 483, 485–86 (1987). Essentially, an attorney acting as a neutral observer is functionally absent.

¶71        Here, the superior court found evidence in Traverso's case "prove[s] that counsel failed to provide *any* assistance of counsel regarding the plea." (Emphasis added.) Effectively, Traverso's counsel's actions amounted to, at best, no action and, at worst, harmful action. *See State v. Padilla*, 176 Ariz. at 82 (requiring resentencing where defense attorney's "conflict of interest . . . adversely affected his representation of defendant at the time of sentencing"). And defense counsel showed no valid tactical reason for not discussing or showing the plea offer to Traverso. *Cf. State v. Nash*, 143 Ariz. 392, 399 (1985) (ruling counsel's actions did not prejudice defendant because of flexibility afforded counsel to act for "valid tactical reasons"). I, thus, find no error in the superior court's grant of relief on Traverso's *Cronic* claim.

V.     The superior court did not err by granting Traverso's IAC claim.

    A.     Traverso proved his IAC claim on the merits, and the superior court acted within its discretion by excusing the delayed filing.

¶72        To grant relief on an IAC claim, a defendant must show (1) counsel's performance was unreasonable "under prevailing professional norms" and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Pandeli*, 242 Ariz. 175, 180 ¶¶ 5–6 (2017). This court reviews the superior court's grant of PCR for an abuse of discretion. *State v. King*, 250 Ariz. 433, 438 ¶ 21 (App. 2021).

¶73        The State contends the superior court did not give enough weight to evidence showing trial counsel's records were destroyed and Traverso received a *Donald* advisement. But the superior court's ruling shows it carefully considered those circumstances, and the record shows other evidence corroborates Traverso's allegations and illustrates why the *Donald* advisory did not dispel the prejudice in the case. I see no reason to

reweigh the evidence. *See id.* at 438–39 ¶ 21 (noting this court defers to the superior court's factual findings in these cases absent "clear error").

¶74 The superior court also permissibly excused Traverso's delay in filing the IAC claim. Rule 32.4(b)(3)(D) requires the superior court to excuse an untimely notice of an IAC claim "if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." Here, the superior court found Traverso did not cause the delay because he attempted to raise the claim earlier, he pursued state- and federal-court litigation on claims in his direct appeal and first PCR petition, and his new counsel for his second PCR took time to investigate his case. *See State v. Armstrong*, 208 Ariz. 345, 353–54 ¶ 40 (2004) (remarking that where a matter is committed to "the sound discretion of a trial judge," an appellate court "will not find that a trial court has abused its discretion unless no reasonable judge would have reached the same result under the circumstances"). The record supports the finding that Traverso did not fail to raise the claim earlier through "[m]ere inadvertence or neglect," which would "not be considered a valid reason for allowing a party to avoid the strict time limits of Rule 32." *State v. Pope*, 130 Ariz. 253, 256 (1981).

> B. *Stewart* and Rule 32.2(a)(3) do not preclude the IAC claim.

¶75 Relying on *Stewart v. Smith*, 202 Ariz. 446 (2002), the majority suggests successive IAC claims mandate "automatic preclusion." *See supra* ¶¶ 11–12. To reach this conclusion, the majority cites dicta in *Stewart*'s conclusion:

> With some petitions, the trial court need not examine the facts. For example, if a petitioner asserts [IAC] at sentencing, and in a later petition, asserts [IAC] at trial, preclusion is required without examining facts. The ground of [IAC] cannot be raised repeatedly. There is a strong policy against piecemeal litigation. *See State v. Spreitz*, 202 Ariz. 1, . . . [3 ¶ 9] (2002).

*Stewart*, 202 Ariz. at 450 ¶ 12; *supra* ¶¶ 10–11. The majority agrees the language is dicta because it was "unnecessary for the [*Stewart*] court to answer the certified question." *Supra* ¶ 11. But the majority concludes that language "expressly stated a specific exception" to the holding and compels preclusion "when a defendant raises an IAC claim in a successive petition and has already raised a different IAC claim in an earlier petition." *Supra* ¶ 11.

¶76        I disagree. A court may choose not to follow dicta if it finds "a cogent reason" to depart from it. *See State v. Fahringer*, 136 Ariz. 414, 415 (App. 1983). I find three cogent reasons to depart from that guidance here.

>        1.        *Stewart* relied on cases decided based on old language in the pre-1992 Rule 32.2(a)(3)—not the rules in effect in Traverso's case.

¶77        The *Stewart* decision cites *Spreitz* to support the broad prohibition against raising IAC claims repeatedly because "[t]here is a strong policy against piecemeal litigation." *Stewart*, 202 Ariz. at 450 ¶ 12. But *Spreitz* did not hold courts must invariably preclude subsequent IAC claims. The defendant in that case raised an IAC claim on direct appeal, which the Arizona Supreme Court considered and rejected on the merits. *Spreitz*, 202 Ariz. at 1 ¶ 2. The defendant then sought to raise additional IAC claims in a subsequent PCR proceeding. *Id.* at ¶ 3.

¶78        *Spreitz* addressed whether raising an IAC claim on direct appeal precluded all later IAC claims. *Id.* The *Spreitz* court held it did not. *Id.* at 3 ¶ 9. *Spreitz* relied in part on a "basic rule" precluding IAC claims a defendant raised or could have raised in a prior Rule 32 PCR proceeding. *Id.* at 2 ¶ 4, 3 ¶ 9. To support the "basic rule," the Arizona Supreme Court cited *State v. Conner*, 163 Ariz. 97, 100 (1990). *Id.* at 2 ¶ 4. But the holding in *Conner* reflected an earlier version and interpretation of Rule 32.2(a)(3)— which changed in 1992.

¶79        Before December 1, 1992, Rule 32.2(a) precluded claims:

>    (1) Still raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24;

>    (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding; [and]

>    (3) Knowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding.

And the rule expressly allowed the court to infer waiver:

>    The court may infer from the petitioner's failure to appeal or to raise an issue on appeal[,] . . . or his failure to raise any ground then available to him in a previous Rule 32 proceeding in which he was represented by counsel, that he

> knowingly, voluntarily and intelligently relinquished the right to do so.

Rule 32.2(c) (1992).

**¶80** But the later amended rule in effect during *Stewart* and Traverso's case removed the language allowing courts to infer waiver without examining facts and explicitly exempted some PCR claims from preclusion. *See* Rule 32.2 (1993, 2009). It also added a comment addressing IAC claims. *See id.*

**¶81** The comment to the rule in effect during *Stewart* and when Traverso filed his first PCR petition included the following:

> [S]ome issues not raised at trial, on appeal, or in a previous collateral proceeding may be deemed waived without considering the defendant's personal knowledge, unless such knowledge is specifically required to waive the constitutional right involved. . . . For most claims of trial error, the state may simply show that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding, and that would be sufficient to show that the defendant has waived the claim.

*Id.* (comments to rule, with the 2009 comment citing *Stewart*).

**¶82** The amendment changed courts' discretion to infer waiver. The pre-1992 rule allowed courts to infer waiver of an IAC claim brought in a subsequent petition solely based on the omission of the claim from a prior PCR proceeding—regardless of the underlying basis of the claim (i.e., "without examining facts"). The post-1992 rule, on the other hand, requires courts to look at the underlying basis of a successive IAC claim before deciding waiver. Rule 32.2(a)(3) (1995). Courts may infer waiver if the basis of the claim does not involve a right which requires personal waiver. *Id.* But courts cannot infer waiver if the claim involved a right of sufficient constitutional magnitude to require the defendant's personal waiver. *See id.*

**¶83** *Conner* expressly applied the pre-1992 rule, which gave courts discretion to infer waiver without examining facts. 163 Ariz. at 100. The *Conner* decision, on which the *Stewart* language relies, bears out this interpretation. *See id.* The history of Rule 32.2(a)(3) shows *Stewart*, *Spreitz*, and *Conner* relied on an old version of the rule to require precluding IAC claims a defendant raised or could have raised in a prior PCR petition. *Stewart*'s dicta, thus, does not apply to post-1992 cases.

¶84         And even if there is no substantive difference between the pre- and post-1992 rule, the pre-1992 rule did not mandate waiver of all subsequent IAC claims. It merely allowed the court to "infer" waiver under certain circumstances. *See* Rule 32.2(c) (1992). On this record, which includes evidence showing Traverso's first PCR attorney made a unilateral decision to omit a valid IAC claim, such an inference is unjustified. *Cf. State v. Carson*, 243 Ariz. 436, 466–67 ¶¶ 13–16 (2018) (holding a defendant may offer conflicting defenses).

> 2.         The facts of *Stewart* are distinguishable from those of Traverso's case.

¶85         The defendant in *Stewart* filed several unsuccessful Arizona PCR petitions and then filed a habeas corpus petition in federal court. *Stewart*, 202 Ariz. at 448 ¶ 4. Here, Traverso has filed only two PCR petitions—the first containing one IAC claim against trial counsel and the second seeking to raise a valid IAC claim his first PCR counsel prevented him from raising. The facts of *Stewart*, thus, do not sufficiently mirror the facts of this case to be applicable.

¶86         *Stewart* did not examine why a defendant did not raise an earlier IAC claim. As the majority notes, *Stewart* answered the question of whether "sufficient constitutional magnitude" under Rule 32.2(a)(3) depends on the merits of the particular claim or the alleged violated right. *Supra* ¶ 9. And, after *Stewart*, the Arizona Supreme Court recognized the need to address whether the reason for the failure to previously raise an IAC claim impacts waiver of that claim. *See State v. Diaz*, 236 Ariz. 361, 363 ¶ 13 (2014) (holding defendant did not waive IAC claim when his counsel failed—at no fault of defendant—to file any petition in defendant's previous PCR proceedings).

¶87         Under the majority's reading, defendants have no recourse when subsequent counsel err. In short, two wrongs make a right. And, although rare, a sequence of counsel errors is the exact situation in which Traverso finds himself. Here, through no fault of his own, Traverso did not raise his plea-related IAC claim in his first PCR petition. Traverso, thus, could not raise his plea-related IAC claim until his second PCR petition.

> 3.         *Diaz* does not require waiver on the facts of this case.

¶88         After it issued *Stewart* and updated Rule 32.2(a)(3), the Arizona Supreme Court considered whether counsel errors precluded a defendant from raising an IAC claim in his third PCR attempt. *See Diaz*, 236 Ariz. 361. In *Diaz*, a defendant's attorneys did not timely file his first two

petitions, preventing Diaz from raising an IAC claim related to a plea bargain. *Id.* at 361–62 ¶¶ 2–5. The *Diaz* court held the defendant did not waive his IAC claim because "through no fault of Diaz's, his counsel failed to file petitions in two prior post-conviction relief proceedings." *Id.* at 361 ¶ 1. Additionally, the *Diaz* court explained that allowing Diaz's IAC claim would not frustrate the purpose of preclusion because it would not result in repeated review, but the first review. *Id.* at 363 ¶ 12.

**¶89** The majority reasons that because Traverso's IAC claim relates to the rejection of a plea offer, his claim does not involve a right requiring personal waiver. *Supra* ¶ 16. But again, the majority relies on dicta for this conclusion. The *Diaz* court said, "defendants do not have a constitutional right to a plea bargain" but, "[n]evertheless, . . . this case presents unusual circumstances that compel a conclusion that Diaz did not waive his IAC claim." *Diaz*, 236 Ariz. at 362–63 ¶¶ 9–10. The *Diaz* court, thus, did not need to discuss whether the defendant had a constitutional right to a plea because that issue did not affect its decision. I decline to rely on dicta in *Stewart* and dicta in *Diaz* to find waiver in a distinguishable case.

**¶90** I focus on *Diaz*'s core ruling: attorney error preventing a defendant from raising an IAC claim in a PCR petition through no fault of the defendant cannot preclude the defendant from raising in a subsequent PCR petition any valid IAC claim foreclosed by that error. *Diaz*, 236 Ariz. at 362–63 ¶ 10. The magnitude of the right forming the basis of the claim has no preclusive relevance to the application of this rule. *See id.* at ¶¶ 10–11. The attorney's omission of Traverso's IAC claim over his objection is substantively no different from the dereliction of the attorneys in *Diaz*.

**¶91** The majority's conclusion that "Traverso cannot rely on a claim that his first PCR counsel was ineffective to avoid preclusion," *supra* ¶ 21, directly conflicts with the holding in *Diaz. See Diaz*, 236 Ariz. at 362–63 ¶ 10. The majority concludes *State v. Mendoza*, 249 Ariz. 180 (App. 2020) and *Martinez v. Ryan*, 566 U.S. 1 (2012) do not support excusing preclusion. *Supra* ¶ 21. But Traverso does not need *Mendoza*'s or *Martinez*'s support because no controlling precedent, statute, or rule directs the superior court to preclude Traverso's claim.

**¶92** True, the defendant in *Diaz* did not raise any IAC claims before his third PCR petition. 236 Ariz. at 362 ¶¶ 3–5. But Traverso, like the defendant in *Diaz*, tried to raise an IAC claim, and his attorney prevented him from doing so. *See id.* And Traverso is not claiming after the fact he would have accepted the plea. Instead, Traverso signed the plea when he first saw it. Traverso also announced the error at sentencing, wrote about it

in his affidavits, and asked his first PCR counsel to raise the claim. So, though Traverso had one successfully submitted PCR petition, he—like Diaz—could not raise a valid IAC claim at his earliest chance because counsel prevented him from doing so.

¶93 At bottom, Traverso, through no fault of his own, could not raise his plea-related IAC claim before his last petition. Nothing in *Stewart*, Rule 32.2(a)(3), or *Diaz* compels preclusion of Traverso's claim.

> C. Traverso's claim involved a right of sufficient magnitude to require personal waiver.

¶94 First, I disagree with how the majority characterizes the right implicated by Traverso's claim. The majority contends the right implicated by Traverso's claim is the right to a plea offer. But Traverso does not argue he has the right to a plea offer when the prosecution extended none. Instead, he argues he had the right to knowingly, voluntarily, and intelligently accept the plea offer the prosecution offered. *See State v. Lee*, 142 Ariz. 210, 215 (1984) (observing that "[i]n keeping with the rights vested in an accused under the Constitution, certain basic decisions have come to belong to an accused" including "whether to plead guilty").

¶95 Second, as previously discussed, I decline to rely on dicta in *Stewart* and *Diaz* to find a decision between a maximum potential sentence of 27 years and one for more than 150 years does not require personal waiver. Moreover, this court has already decided "once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." *Donald*, 198 Ariz. at 413 ¶ 14. Defense counsel's duty to inform a defendant adequately shows the defendant has the right to use that information to make a knowing, voluntary, and intelligent decision.

¶96 For those reasons, I would rule the right to decide to accept or reject a plea, once offered, requires personal waiver. Accordingly, because Traverso did not waive his IAC claim knowingly, voluntarily, or intelligently, he may raise his claim in his second PCR petition.

VI. Conclusion

¶97 Under the facts of this case and controlling precedent, I would not apply waiver and require Traverso to spend the rest of his life in prison solely because his attorneys repeatedly failed him. I would deny relief to the State on the superior court's rulings on Traverso's *Cronic* and IAC

claims and would remand for further proceedings on both. For the above reasons, I respectfully concur in part and dissent in part.